ANTOINE GERMAIN, PETITIONER-APPELLANT, v.
COOL-RITE CORPORATION, RESPONDENT-APPELLEE.

Argued February 9, 1976—Decided April 9, 1976.

(1)

2

Mr. *Edward Slaughter, Jr.* argued the cause for petitioner-appellant (*Messrs. Freeman & Bass,* attorneys).

Mr. *Edwin J. McCreedy* argued the cause for respondent-appellee (*Messrs. Conant and McCreedy,* attorneys).

The opinion of the Court was delivered by

CONFORD, P. J. A. D., Temporarily Assigned. The issue in this workmen's compensation case is whether petitioner is totally and permanently disabled from the accidental loss of parts of four fingers of the left hand while employed by respondent as a machine operator. Petitioner is a non-English speaking Haitian who had been in this country less than a year at the time of the accident. Petitioner invoked the "odd-lot" doctrine of total disability in the Appellate Division and on the petition for certification to this court, but the doctrine was not cited *eo nomine* in the Division of Workmen's Compensation nor alluded to by the Judge of Compensation in denying total permanent disability and awarding petitioner 100% of the scheduled loss of a hand and 25% permanent total disability for neuropsychiatric impairment.

On appeal by the petitioner the Appellate Division affirmed, holding the proofs fell short of establishing a

*prima facie* case of unemployability under the odd-lot doctrine and that therefore the employer had no burden to come forward with proof of employability under the rule, ordinarily imposing that burden on the employer in such case, *Zanchi v. S. & K. Const. Co.,* 124 *N. J. Super.* 405, 411–412 (Cty. Ct. 1971), reinstated after reversal by Appellate Division, 63 *N. J.* 331 (1973), a rule recently reiterated in *Barbato v. Alsan Masonry,* 64 *N. J.* 514, 529, 530 (1974). We granted certification. 68 *N. J.* 487 (1975). Because of the nature of the findings of fact by the Judge of Compensation, we are constrained, in the light of the evidence, to disagree with the Appellate Division and to remand the case to the Division of Workmen's Compensation for further proofs, new findings and a redetermination in that tribunal.

Petitioner was born in Haiti in 1924 where he attended school about 10 years. French is the language of Haiti, but petitioner learned a "little bit" of English in school (his testimony in the present case was through an interpreter; the communication barrier is obvious from the transcript). In Haiti he and his wife had several small businesses, now conducted there by relatives. In 1970 he twice visited the United States, the first time as a tourist and the second for the purpose of purchasing clothing for resale in Haiti. On the second occasion he, his wife and one of his children remained in the United States. His immigration status is uncertain from the record. He has another child in school in Canada and three in Haiti with his mother. There is no indication that he receives any income from Haiti. He lives on the compensation award and his wife's part-time earnings.

He became employed here, first in an auto paint shop, and then as a machine operator in two places, the second being with the respondent when the accidental injury took place. Petitioner, who is right-handed, suffered a crush injury of the left hand in January 1971, necessitating amputation of parts of all fingers except the thumb.

The testimony renders it clear that petitioner substantially lost the use of the left hand. He also became subject to

recurring cramps from the elbow down and difficulties in extending his arm and flexing his wrist. He is able, however, to drive an automobile. There was considerable medical testimony as to psychiatric involvement. He became depressed and ashamed of the condition of his hand, wearing a glove on it most of the time. After the accident he had tensions, headaches, diminution of libido and a sense of isolation exacerbated by his differing cultural background. He had psychiatric treatment supplied by respondent, but discontinued it when the psychiatrist moved to a different city. The treating psychiatrist did not believe petitioner could work, as he needed two hands for manual labor. The psychiatric condition would probably eventually disappear.

A second medical expert, a neurologist and psychiatrist, examined petitioner January 2, 1973 and found petitioner nervous and ashamed of his hand, which he kept covered in a glove. The physician diagnosed a "post-traumatic psychoneurosis of the conversion hysterical reaction type with depression and partial sexual impotency." He found petitioner 100% disabled "both from the neuropsychiatric point of view and as a physiological industrial unit." That estimate was restricted by the judge to "the difficulty arising from the neuropsychiatric and neurological". The doctor stated petitioner had "lost the will to work as a result of this psychiatric condition." He was therefore "100% disabled from a psychiatric point of view."

A medical witness for respondent estimated petitioner to have a neuropsychiatric diasbility of 5% of total. He saw no psychiatric basis for petitioner's not working.

Petitioner testified on October 30, 1973. He said he had looked for work at more than 30 factories in the general area of Linden, where he lives, and in Essex County. He specified some of the firms, and proffered a list drawn up by his cousin. He stated he had been turned down by all of them except one when they saw his hand. The one exception, the Simmons Company, told him recently that they had a job for him "when he is finished with the accident,

with the hand." It was not clear whether this meant when the compensation case was concluded or when he could use his hand. At an adjourned hearing counsel for respondent reported he had checked with Simmons and that they did not recall petitioner.

On cross-examination petitioner stated he intended to stay in the United States and bring his other children here to go to school.

The opinion of the Judge of Compensation presents no clearly reasoned finding to support a rejection of the petitioner's claim of total disability. The language used gives the impression that the judge thought petitioner could maintain himself as a business entrepreneur. He said:

\* \* \* Petitioner, no doubt, has this partial amputation. He exhibits considerable anxiety about the appearance and the use and inability to use it and also the fact that he says that he cannot speak English and, in fact, we had to have an interpreter here since he only speaks French. The background shows that he came from Haiti and while down in Haiti he did have some businesses and still owns one business which his mother is running and had a cousin here that would buy items and send them to him for resale down there; that he came to the United States twice; the first time on a visitor's visa and made some purchases for use in the store back at Haiti; the second time he came here he got this job where he caught his hand in the machine. He also had an auto shop down there at one time, but does not have it; but his testimony is that he still has these two stores, one which is run by his mother and his sister *and I get the impression that he still is making purchases here and selling them down there to keep the store going.* He says he gets nothing from it, but there was no proof that he was, although I am not completely satisfied with the petitioner's testimony that he is totally unable to do anything *or to buy anything or that he does not have the business still going or has nothing at all to do with it.* He is certainly considerably disabled by the loss of the fingers, which would make it difficult to get a job, but not impossible.

\* \* \* \* \* \* \* \*

\* \* \* Dr. Revitch testified that the man can get better under his treatment and under his guidance and that, in fact, the man asked if the doctor could help him contact the Council here so that he can trade with Haiti. In other words, buy goods here for sale down in Haiti or buy goods in Haiti for sale up here, *so that he had in his*

*mind some business of his own or type of trading business that he was able to do.*

*There is nothing wrong with his mind as far as business is concerned and ability to direct some type of a business.* He certainly is handicapped in the use of his hands because of the partial amputations, although I believe that he can use and work with his hands much better than he says; that it is not completely unusable.

\* \* \* \* \* \* \* \*

\* \* \* I did have an opportunity to watch him and his expressions and I feel that the man can do something; that he doesn't have any problem with staying in this country. *I am sure he can carry on his trade over here. In fact, I still feel he had a connection with a business down there and has something* because that seemed to be his area. He doesn't want to go back to Haiti, apparently, but while the man is not, I find, totally disabled he does have a considerable neuropsychiatric disability. (Emphasis added).

To the extent that the foregoing expressions may be regarded as findings that petitioner is able to sustain himself as a businessman in this State, they are unsupported by substantial credible evidence on this record. There is nothing in the case to justify an assumption that petitioner receives any income from the Haitian enterprises. (As to an auto repair shop owned by him and run by a cousin, the latter is not obliged to pay him anything.) He may possibly render some type of occasional assistance to his relatives running those enterprises (for example, by buying for them) but this record could not justify a finding that he derives income as personal earnings from those businesses in an amount which could sustain him and his family economically. Some such finding would be necessary to justify a holding that a person in petitioner's circumstances is economically self-sustainable by his personal efforts in business so as to negate a contention of unemployability for workmen's compensation purposes. In this regard it is to be kept in mind that petitioner was injured doing manual labor and is apparently in the market for employment in such capacity. His injury seriously handicaps him for such work.

Obviously a return from investments, if any, would not have the legal effect of negating unemployability. *Cf.*

*Chatfield v. Industrial Accident Board,* 140 *Mont.* 516, 374 *P.* 2d 226, 228 (Sup. Ct. 1962).

The ability to perform limited service in one's own or a family enterprise may not of itself be sufficient to negate industrial unemployability. The question in that kind of situation is the workers' ability to sell his services in a competitive job market. See *Cleland v. Verona Radio, Inc.,* 130 *N. J. L.* 588 (Sup. Ct. 1943); *Lozano v. Archer,* 71 *N. M.* 175, 376 *P.* 2d 963 (Sup. Ct. 1962); *Chatfield v. Industrial Accident Board, supra; Connolly v. Workmen's Compensation Appeal Board,* 8 *Pa. Comwlth.* 99, 301 *A.* 2d 109 (Comwlth Ct. 1973); *Sproul v. Industrial Commission,* 91 *Ariz.* 128, 370 *P.* 2d 279 (Sup. Ct. 1962). Ability "for 'light' or intermittent work or labor is not inconsistent with total incapacity". *Cleland v. Verona Radio, Inc., supra* (130 *N. J. L.* at 595).

Rejecting, as we thus do, the principal factual predicate relied upon by the Judge of Compensation for denying the claim of total disability — the ability to operate a business — we are left with a factual showing which, in our view, amounts to a *prima facie* case by petitioner of total permanent disability under the odd-lot doctrine. Contrasting with petitioner's ability and willingness to work as a machine operator up to the time of the accident, he had not been employed in any manner almost three years later, when the hearing took place. There was unrefuted evidence of considerable unsuccessful effort to obtain employment. While the inference from the proof is that the condition of his hand repelled prospective employers, it is common sense that his language difficulty would additionally hinder petitioner in obtaining work in a competitive job market. The extent of the influence of his psychiatric condition is more problematical, and we do not rely on it for our conclusions.

Our thorough review of the "odd-lot" doctrine of total disability in cases like *Barbato v. Alsan Masonry, supra, Oglesby v. American Dredging Co.,* 64 *N. J.* 538 (1974), and *Zanchi v. S. & K. Const. Co., supra,* is too recent to require

extended discussion thereof here. It suffices to say that if, because of handicaps personal to the worker over and above the limitations on work capacity directly produced by his accidental injury, he is unemployable on a regular basis in a reasonably stable job market, he is to be considered totally disabled for workmen's compensation purposes. See *Lightner v. Cohn,* 76 *N. J. Super.* 461 (App. Div. 1961), certif. den. 38 *N. J.* 611 (1962); *Rodriguez v. Michael A. Scatuorchio, Inc.,* 42 *N. J. Super.* 341 (App. Div. 1956), certif. den. 23 *N. J.* 140 (1957). In this case the relevant personal handicaps are petitioner's unfamiliarity with English and his psychiatric condition, to the extent the fact-finder may choose to ascribe weight to it.

▮ Putting aside the unsupported theory of employability as an entrepreneur, we note that the Judge of Compensation did not reject the thesis of total disability under the odd-lot doctrine insofar as concerns the other proofs in the case. We believe petitioner did make out a *prima facie* case. Unless the employer comes forward with proof that employment of the kind mentioned above is available for the petitioner the Judge of Compensation upon reviewing the entire record will be justified in rendering an award of total and permanent disability.

We are conscious of the possibility that after an award of total permanent disability petitioner's subsequent activities might disprove the correctness of the determination. The statute provides at least a partial remedy for that situation. Under *N. J. S. A.* 34:15-27 the employer may at any time after an award is made show a decrease in disability and obtain a curtailment, prospectively, of the original award. See *Cleland v. Verona Radio, Inc., supra* (130 *N. J. L.* at 590).

On the remand the Judge of Compensation may require proof as to petitioner's present disability and employability to supplement the existing record. At the conclusion of the hearing the Judge of Compensation must weigh and evaluate all the evidence to determine whether petitioner has

sustained his ultimate burden of proof of permanent total disability.

A word as to procedure when petitioner relies on the odd-lot doctrine for total permanent disability. The pretrial memorandum should specify that issue so that respondent can be prepared to meet it. In such situation, if the respondent at the close of petitioner's case moves for a ruling as to whether petitioner has established a *prima facie* case of total permanent disability under the odd-lot doctrine the judge shall make such a determination so that the respondent can know whether it has the burden of coming forward with proof of employability. In the present case there was no advance notice of the issue to the respondent although petitioner did make it fairly clear during the presentation of his case that he was relying on the doctrine.

The judgment of the Appellate Division is reversed and the cause remanded to the Division of Workmen's Compensation for further proceedings consonant with this opinion.

*For reversal and remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For affirmance*—None.