JOSE L. CANAS, APPELLEE, V. MARYLAND CASUALTY COMPANY
AND F & S SAUSAGE COMPANY, APPELLANTS.

459 N.W.2d 533

Filed August 24, 1990.　No. 89-1374.

Stephen L. Ahl, of Wolfe, Anderson, Hurd, Luers & Ahl, for appellants.

Claude E. Berreckman, of Berreckman & Berreckman, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

An employer and its insurer appeal a Workers' Compensation Court finding that an injured worker's temporary total disability benefits were incorrectly computed and that the cost of a penile implant is a compensable medical procedure. We affirm in part, and in part reverse and remand.

The determinations were made by a majority of a three-judge Workers' Compensation Court panel upon rehearing.

"In determining whether the evidence is sufficient to support an award by the compensation court, the evidence must be considered in the light most favorable to the successful party. The findings of fact made by the compensation court after rehearing will not be set aside unless clearly wrong." *Snyder v. IBP, inc.*, 235 Neb. 319, 320, 455 N.W.2d 157, 159 (1990). As the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Brazee v. City of Lincoln*, 234 Neb. 680, 452 N.W.2d 529 (1990).

On May 16, 1978, Jose L. Canas was employed as a boner at F & S Sausage Company in Cozad, Nebraska. A "boner" removes the bones from a carcass. On that date, Canas slipped and fell to a concrete floor on his back while carrying a quarter side of beef. There is no dispute that the injury arose out of and in the course of Canas' employment with F & S Sausage Company. The defendant Maryland Casualty Company is the employer's workers' compensation insurance carrier.

Following the accident, Canas experienced acute low back

and left leg pain and numbness in his left leg, and his left leg would give way. In July 1978, Canas underwent a lumbosacral fusion in Hastings. After the surgery, he continued to experience pain and weakness and his left leg continued to give way. Shortly after the surgery, Canas began having problems with his sexual functioning. It gradually worsened. On March 24, 1981, Canas had a second lumbosacral fusion performed in Lincoln. Medical records document Canas' continuing problems with his back and legs in the years following the second surgery. A Cozad physician reported on April 11, 1989, that Canas had spinal stenosis and used two canes for walking. At the time of the rehearing, he was completely impotent. Since the accident, Canas has not been able to work. The compensation court found that Canas has been totally disabled from and including May 17, 1978, to and including the date of the rehearing and that Canas would remain totally disabled indefinitely. That finding has not been challenged. At the time of rehearing, Canas was 59 years of age and married.

Prior to the commencement of this action, Canas was receiving temporary total disability benefits of $148.19 per week from the date of the accident. Penile implant surgery was scheduled for Canas on August 22, 1986, but he canceled the surgery after the appellants denied coverage. The compensation court panel majority determined that Canas was entitled to receive $168.08 per week in temporary total disability benefits from and including May 17, 1978, to and including the date of the rehearing and for so long as Canas remains totally disabled. In determining the average weekly wage, the majority excluded from the 26 weeks preceding the accident those weeks during which Canas worked fewer than 40 hours due to holidays, vacation, and sick leave. The majority further determined that the penile implant was a compensable procedure.

## AVERAGE WEEKLY WAGE

Under the schedule of compensation as set forth in Neb. Rev. Stat. § 48-121 (Reissue 1988), the compensation during a period of total disability is $66\frac{2}{3}$ percent of the wages the employee received at the time of injury up to a maximum limit

and not below a minimum amount. The calculation of the wages received at the time of injury is prescribed in Neb. Rev. Stat. § 48-126 (Reissue 1988). In relevant part, § 48-126 states:

Wherever in the Nebraska Workers' Compensation Act the term wages is used, it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident. . . . In continuous employments, if immediately prior to the accident the rate of wages was fixed by the day or hour [the employee's] weekly wages shall be taken to be his or her average weekly income for the period of time ordinarily constituting his or her week's work, and using as the basis of calculation his or her earnings during as much of the preceding six months as he or she worked . . . .

Canas was receiving a wage of $5.25 per hour at the time of his injury. The president of F & S Sausage testified that he did not guarantee Canas a certain number of hours of work per week but that Canas was paid on the number of hours Canas actually worked in a week. He further testified that Canas' *ordinary* workweek was 45 to 50 hours. In the 26 weeks preceding the accident, each of Canas' workweeks was not less than 44.03 hours or more than 50.87 hours, with seven exceptions. In those 7 weeks, Canas worked 20.77, 37.43, 34.75, 14.35, 36.63, 7.78, and 36.75 hours, respectively. It is uncontroverted that Canas' shortened workweeks were due to vacation time incurred in moving his family from Texas to Nebraska, sick leave, and holidays. The parties do not dispute that Canas' employment was continuous, nor do they dispute his hourly wage under the contract of hire. In their first assignment of error, the appellants claim that the majority of the panel erred in computing Canas' average weekly wage under § 48-126. It is their position that in making the computation under § 48-126, one multiplies the actual number of hours worked by an injured employee in the 26-week period preceding the accident by the employee's hourly wage during that period. That number is then divided by 26 to arrive at the average weekly wage. The appellants further assert that the Legislature inserted the term "average" in recognition of the fact that there would be fluctuations in an employee's

workweeks preceding an accident.

The fallacy of the appellants' argument can be demonstrated by deleting the following language from § 48-126: "for the period of time ordinarily constituting his or her week's work." Without that clause, the sentence at issue would read: "[W]eekly wages shall be taken to be his or her average weekly income . . . and using as the basis of calculation his or her earnings during as much of the preceding six months as he or she worked for the same employer." If the statute so read, one would determine the average weekly wage just as the appellants suggest. Thus, the appellants' calculation would be the same even if the foregoing language were deleted. However, effect must be given, if possible, to all the several parts of a statute; no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided. *NC+ Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 363 N.W.2d 362 (1985). We conclude that by inclusion of the clause "for the period of time ordinarily constituting his or her week's work," the Legislature sought to exclude those abnormally low workweeks from the 26-week period used for the calculation. The appellants' reading of the statute would lead to harsh and oppressive results where, for example, an employee was ill during much or all of the 6 months preceding his or her work-related accident. Our conclusion in this case is further dictated by the result in the recent case of *Clifford v. Harchelroad Chevrolet*, 229 Neb. 78, 425 N.W.2d 331 (1988).

In *Clifford, supra,* Clifford's compensation was based on output, or a percentage of sales made, and he was paid commissions earned on a monthly basis at the end of each month. In late May 1984, Clifford became ill, and over the course of the remaining months of 1984, he was subjected to treatment and testing which resulted in numerous hospitalizations and absences from employment. The illness prevented Clifford from working the latter part of May, as well as most of June and July. In December 1984, he underwent surgery. Clifford resumed employment in his old position on June 15, 1985, and was killed 2 days later in an auto accident which arose out of and in the course of his employment with the defendant. No commissions were earned by Clifford in 1985.

Thus, the problem was in determining the period of time which was appropriate for calculating Clifford's average weekly wage. Neither the single judge at the one-judge hearing nor the three judges on rehearing used the period of time from December 1984 to June 1985 to calculate the amount of compensation due the decedent's widow and son. On rehearing, a majority of the three-judge panel used the 6-month period preceding December 1984 but excluded 10 weeks during that period when the decedent did not work. This court approved, holding that "[t]he finding of the majority of the three-judge panel is based on the language of the statute and is supported by the record." *Id*. at 82, 425 N.W.2d at 334. The fact that Clifford was paid on commissions and Canas on an hourly basis is unimportant. Section 48-126 makes no distinction between wages fixed by hour and those by output under continuous employments.

For the reasons stated in the foregoing discussion, we conclude that the decision of the compensation court panel majority to exclude 7 weeks in computing Canas' average weekly income was correct.

Nonetheless, the workers' compensation panel committed plain error in computing Canas' benefits. See *In re Interest of A.M.H.*, 233 Neb. 610, 447 N.W.2d 40 (1989) (asserting that although the Supreme Court will not consider assignments of error which are not discussed in the briefs, it always reserves the right to note plain error which was uncomplained of at trial or on appeal but is plainly evident from the record, and which is of such nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, or fairness of the judicial process). In computing Canas' benefits, the panel relied on § 48-121 as it existed at the time of rehearing. However, this amendatory act was not the applicable statute. See *Chadd v. Western Cas. & Sur. Co.*, 166 Neb. 483, 89 N.W.2d 586 (1958) (holding that in making the calculations under § 48-121, an amendatory statute may not be applied retroactively, and the statute as it existed at the time of injury governs). See, also, § 48-126; 2 A. Larson, The Law of Workmen's Compensation § 60.50 (1989) (benefit level in effect at the time of injury controls). Section 48-121 (Reissue 1978), as it existed on May 16, 1978, provided, "For total disability, the

compensation during such disability shall be sixty-six and two-thirds per cent of the wages received at the time of injury, but such compensation shall not be more than one hundred fifty-five dollars per week . . . ." Therefore, the correct amount to award Canas is $155 per week, not $168.08 per week as the panel's majority determined.

## PENILE IMPLANT

The appellants' final assignment of error claims that the compensation court erred in determining that Canas is entitled to have a penile implant paid for by the appellants. Appellants argue (1) that due to the length of time between the date of the injury and the onset of Canas' impotency the medical evidence was insufficient to demonstrate that Canas' impotency was related to the accident, and (2) that even assuming that medical causation was established, a penile implant is not designed to either relieve pain or promote or hasten the employee's restoration to health and employment.

The issue of a penile implant under this state's workers' compensation statute is one of first impression. Although the statutes under which they were operating are not identical to Nebraska's, other courts which have been confronted with an employer's refusal to compensate a worker for a penile implant necessitated by an accident arising out of and in the course of employment have ruled in favor of the worker. See, *Jackson v. Greyhound Lines, Inc.*, 734 S.W.2d 617 (Tenn. 1987); *Crain Burton Ford Co. v. Rogers*, 12 Ark. App. 246, 674 S.W.2d 944 (1984); *Freeman United Coal Mining Co. v. Ind. Com.*, 81 Ill. 2d 335, 410 N.E.2d 48 (1980).

Neb. Rev. Stat. § 48-120 (Reissue 1988) provides: "The employer shall be liable for all reasonable medical, surgical, and hospital services . . . appliances, supplies, prosthetic devices, and medicines as and when needed, which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment . . . ."

The appellants' argument that Canas' proof was insufficient to show that his impotence was caused by his work-related accident is without merit. Canas testified that he first noticed a

lessening in sexual functioning within 2 to 3 months of his work-related accident and that this was after his first surgery. The medical evidence that Canas' back surgery, which was necessitated by his work-related accident, caused his impotence is uncontradicted. Whether an injury is caused by a work-related accident is a question of fact. See, *Masters v. Iowa Beef Processors*, 220 Neb. 835, 374 N.W.2d 21 (1985); *Hare v. Watts Trucking Service*, 220 Neb. 403, 370 N.W.2d 143 (1985). In view of the uncontroverted medical evidence, the workers' compensation court panel majority's finding that Canas' impotency was a result of the appellee's work-related accident is not clearly wrong.

We next consider whether the evidence supports the panel majority's finding that a penile implant would relieve Canas of pain, as required by § 48-120.

Canas testified that due to his impotency, he and his wife had contemplated divorce. Canas further testified that before the accident, he was perfectly compatible and sexually active with his wife. Nine children were born to the Canases, one of whom is still dependent upon the appellee. Four doctors informed Canas that his impotency could be corrected with a penile implant.

It was on this evidence and the common knowledge of the fact finder that the majority of the workers' compensation court panel found that a penile implant was "a reasonable procedure for the purpose of making [Canas] whole and reducing his '*pain.*'" (Emphasis supplied.)

The appellants argue that a penile implant is not designed to either relieve pain or promote or hasten the employee's restoration to health and employment. The appellants further claim that there is no evidence in the record that Canas suffers any physical pain. They further contend that there is no testimony or evidence in the record that Canas suffers any mental pain, psychological or emotional, as a result of his impotency.

This court has held that in a workers' compensation case, compensation is not restricted to physical pain. See *Johnston v. State*, 219 Neb. 457, 364 N.W.2d 1 (1985) (holding that where the evidence is sufficient to permit the triers of fact to find that

the psychological injury is directly related to the accident and the employee is unable to work, the employee is entitled to be compensated). We have further held that "expert opinion testimony . . . is not required just because the case may concern a matter of science or special knowledge. . . . The test is whether . . . the particular issue can be determined from the evidence presented and the common knowledge and usual experience" of the fact finders. *Yount v. Seager*, 181 Neb. 665, 670-71, 150 N.W.2d 245, 250-51 (1967) (holding that expert testimony was not necessary in that case to prove future pain, disability, and medical expense). See, also, *Clark v. Village of Hemingford*, 147 Neb. 1044, 26 N.W.2d 15 (1947) (a workers' compensation case holding that where the injuries are objective and the conclusion to be drawn from proved basic facts does not require special technical knowledge or science, the use of expert testimony is not legally necessary).

Obviously, the "pain" referred to by the majority of the workers' compensation court panel is mental anguish or pain that the panel found Canas suffers by reason of his impotency. It is uncontroverted that Canas' impotency, which was caused by his work-related accident, once threatened to destroy his marriage. The workers' compensation court majority could, and apparently did, infer that as long as Canas is impotent, his marriage remains in jeopardy and that in turn causes Canas to suffer mentally.

It cannot be said that the majority of the workers' compensation court panel, as the fact finder, using its common knowledge and usual experiences, was clearly wrong in determining that Canas is entitled to a penile implant under Nebraska's Workers' Compensation Act. All of the appellants' assignments of error are without merit.

The decision of the panel of the Workers' Compensation Court is affirmed in part and in part reversed and remanded to enter an order consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.