ANGELITA MATA, APPELLANT, V. WESTERN VALLEY PACKING, APPELLEE.

462 N.W.2d 869

Filed November 16, 1990.   No. 90-079.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellant.

James M. Mathis, of Holtorf, Kovarik, Ellison & Mathis, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Angelita Mata has appealed to this court, claiming primarily that as a result of a work-related accident she suffered a loss of earning power greater than that found by a three-judge Workers' Compensation Court panel. She also complains about other aspects of the award.

We reverse, and remand this cause to the Workers' Compensation Court for further proceedings.

Mata's assignments of error merge to allege that the compensation court panel erred in (1) failing to find that she was temporarily totally disabled indefinitely or permanently totally disabled; (2) determining the amount of penalties, interest, attorney fees, and costs and failing to make an award pursuant to the parties' stipulation; and (3) failing to permit Mata to proceed with this appeal without payment for a transcript and bill of exceptions.

Prior to the injury giving rise to this case, Mata was employed by Western Valley Packing (Western) to sort and pack

meat. On September 30, 1985, Mata, at the age of 39 years, slipped on grease at Western and fell to the floor, injuring her back and neck. The parties have stipulated that Mata's injuries arose out of and in the course of her employment with Western.

Due to her injury, Mata sought medical attention, and a myelogram revealed a discogenic problem at L5-S1. On March 10, 1986, back surgery was performed by Dr. Ernest Beehler, a neurosurgeon. Dr. Beehler did not find an extruded disk, but did perform an exploratory laminectomy. After surgery, Mata's condition improved initially, but the pain returned shortly thereafter. At a deposition taken on September 14, 1989, Mata testified that she was in constant pain, with the pain localized in her back and right leg, and that she was being treated by a chiropractor three times per week. From her work-related accident to the time of the hearing before the workers' compensation panel, Mata sought medical attention on a number of occasions for her back and leg pain.

In his most recent report, dated January 10, 1989, Dr. Beehler stated that

> [Mata] has continued to have guarded movements of the low back with limitation of straight leg raising and tenderness over the right sciatic foramen, as well as a loss of curve in the lumbar spine, suggesting a state of muscle spasm. This is objective, and of course lends validity to her complaints.

Dr. Beehler determined that in any future employment Mata should be restricted to lifting no more than 15 pounds in a nonrepetitious situation and that Mata's bending and stooping should also be limited.

Mata was born in Mexico and completed third grade schooling there. She has had no further formal education. While Mata is able to communicate some in the English language, the parties dispute the degree of Mata's proficiency in that language.

The evidence before the workers' compensation panel reflects that since the date of her accident, Mata has not worked and that she will not be able to return to the type of work which she previously performed for Western. Mata's employment history established that prior to her employment with Western,

she performed similar work for another employer, did seasonal fieldwork, made coils and wires, and sewed clothing. There was evidence that with respect to Mata's former jobs which she could still physically perform, one employer is no longer in business and the other implemented a policy requiring that its employees be able to read the English language. There was evidence that Mata's vocational limitations as to math, vocabulary, language usage, spelling, and comprehension were far below average. Her test scores for motor coordination and manual dexterity, for the most part, were also below average.

Western agreed to pay Mata's medical expenses incurred prior to the rehearing before the Workers' Compensation Court panel, and to pay all of Mata's future medical expenses arising out of her injury. No issue has been raised regarding the payment of Mata's medical expenses.

The parties stipulated that Mata's average weekly wage at the time of her work-related injury was $263.92 and that Mata was entitled to $175.95 per week for the period of temporary total disability. Western paid Mata $150.33 per week for the period commencing October 8, 1985, up to and including December 29, 1987. It was stipulated that Western would pay Mata $275 for a period of time in October 1985 and for 4 other days when she was not compensated and that Mata would waive the penalties, waiting time, attorney fees, and interest for those periods of time. From December 29, 1987, until February 14, 1989, Western compensated Mata at the rate of $15.03 per week for her permanent loss of earning power.

The compensation court panel found that Western should have paid Mata $175.95 per week, instead of the paid amounts of $150.33 per week, for 115²/₇ weeks for the period of October 8, 1985, through December 29, 1987, and assessed a waiting-time penalty for the difference in the amounts. Payments of $87.93 per week for 184⁵/₇ weeks were ordered by the compensation court panel, to compensate Mata for her permanent partial disability. Regarding Western's payments of $15.03 per week for Mata's permanent partial disability, the compensation court panel did not assess a penalty for the difference in the amounts, although the panel found that Mata's permanent partial disability was greater than

determined by Western. The compensation court panel declared that "[i]n determining the extent of plaintiff's permanent loss of earning power, the Court has disregarded and excluded the effect thereon, if any, of plaintiff's educational and English language deficiencies." The panel found that Mata is entitled to on-the-job training. The panel did not award interest or costs to Mata for the rehearing.

## I. EXTENT OF DISABILITY

Dean Ventor, a vocational consultant, evaluated Mata's employability, including the relevancy of Mata's English language proficiency. The purpose of a vocational evaluation is to determine a subject's employability, taking into consideration job history, educational background, and medical limitations. Ventor testified that he could not find Mata any job because of her problems with the English language. He further testified that considering the doctor's restrictions placed upon Mata and her language limitations, Mata's earning loss in the Gering/Scottsbluff area "would be over 90 percent, it would be near total." Without the language deficiency, Ventor opined, Mata suffered a 50-percent loss of earning power.

As previously stated, in determining the extent of Mata's permanent loss of earning power, the compensation court panel "disregarded and excluded the effect thereon, if any, of [Mata's] English language deficiencies." Mata first argues that the compensation panel incorrectly disregarded her language difficulties and that when this consideration is also taken into account, her disability is total, as she is unemployable.

Whether a worker's language ability may be disregarded in determining the extent of the worker's disability is initially a question of law. Whether a worker is deficient in language skills presents a question of fact. From the "Award on Rehearing," it cannot be determined whether the compensation panel addressed the question of law or the question of fact in regard to Mata's language skills. We initially consider whether a worker's language skills can be disregarded as a matter of law.

Total disability in the context of the workers' compensation law does not mean a state of absolute helplessness, but means disablement of an employee to

earn wages in the same kind of work, or work of a similar nature, that he or she was trained for or accustomed to perform, or any other kind of work which a person of his or her mentality and attainments could do.

*Luehring v. Tibbs Constr. Co.*, 235 Neb. 883, 890, 457 N.W.2d 815, 820 (1990); *Kleiva v. Paradise Landscapes*, 230 Neb. 234, 430 N.W.2d 550 (1988). Total and permanent disability contemplates the inability of the worker to perform any work which he or she has the experience or *capacity* to perform. *Krijan v. Mainelli Constr. Co.*, 216 Neb. 186, 342 N.W.2d 662 (1984). See, also, *Kleiva, supra* (stating that the record in the case did not support a conclusion that the plaintiff was unable to perform any work which he or she had the experience or capacity to perform). The worker has the burden to prove his or her claimed disability. *Briggs v. Consolidated Freightways*, 234 Neb. 410, 451 N.W.2d 278 (1990).

"Under the odd-lot doctrine, which is accepted in virtually every jurisdiction, total disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market." 2 A. Larson, The Law of Workmen's Compensation § 57.51(a) at 10-164.68 (1989). Nebraska has adopted the odd-lot doctrine. See, e.g., *Brockhaus v. L. E. Ball Constr. Co.*, 180 Neb. 737, 145 N.W.2d 341 (1966); *Wheeler v. Northwestern Metal Co.*, 175 Neb. 841, 124 N.W.2d 377 (1963). In the context of this case, Professor Larson has further written:

A considerable number of the odd-lot cases involve claimants whose adaptability to the new situation created by their physical injury was constricted by lack of mental capacity or education. This is a sensible result, since it is a matter of common observation that a man whose sole stock in trade has been the capacity to perform physical movements, and whose ability to make those movements has been impaired by injury, is under a severe disadvantage in acquiring a dependable new means of livelihood.

2 A. Larson, *supra*, §57.51(d) at 10-164.84(24), (37), and (38).

While this court has not addressed the precise issue at hand,

it is clear that our precedents dictate that the ability to communicate in English, if relevant, should be considered in determining the magnitude of a worker's disability. See, *Luehring, supra*; *Krijan, supra*. A number of cases from other jurisdictions have held that language skill is a factor to be considered in determining whether a claimant is totally disabled. See, e.g., *Guerrero v. Tico*, 436 So. 2d 1237 (La. App. 1983) (finding that the plaintiff's pain, in combination with her lack of work experience, language skills, and job training, rendered her totally and permanently disabled); *Pacheco v. State Accident Insurance Fund*, 34 Or. App. 979, 580 P.2d 208 (1978) (increasing the percentage of the claimant's disability in view of his age and more particularly his total lack of education and inability to speak English); *Germain v. Cool-Rite Corp.*, 70 N.J. 1, 355 A.2d 642 (1976) (holding that a worker's unfamiliarity with English and his psychiatric condition established a prima facie case of permanent disability under the odd-lot doctrine). Thus, it is clear that the compensation panel erred if it, as a matter of law, disregarded Mata's English-speaking skills in deciding the degree of her disability.

The findings of fact made by the compensation court will not be set aside upon appeal unless clearly wrong. As the trier of fact, the compensation court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Canas v. Maryland Cas. Co., ante* p. 164, 459 N.W.2d 533 (1990). Whether an injured worker is totally disabled is a question of fact to be determined by the compensation court, whose finding may be reversed upon appeal only if it is clearly wrong. *Sherwood v. Gooch Milling & Elevator Co.*, 235 Neb. 26, 453 N.W.2d 461 (1990); *Parker v. St. Elizabeth Comm. Health Ctr.*, 226 Neb. 526, 412 N.W.2d 469 (1987).

Since under our standard of review the compensation panel is the finder of fact on the instant question, we make no factual finding as to Mata's English-speaking ability. Because it is unclear whether the compensation panel decided as a matter of law or as a matter of fact to disregard Mata's alleged deficiencies in the English language, the cause is remanded so that the compensation panel may make a factual determination with respect to Mata's proficiency or lack thereof in the English

language.

## II. AMOUNT OF AWARD

Mata contends that the compensation panel erred in determining the amount of her award and in failing to grant her a waiting-time penalty, attorney fees, interest, and costs. Upon remand, the Workers' Compensation Court may modify Mata's award and may review the matters contained in Mata's second assignment of error. It would be an exercise in futility for this court to address the questions that Mata raises in her second assignment of error.

## III. COSTS OF THIS APPEAL

At the time she filed her notice of appeal from the Workers' Compensation Court, Mata filed a poverty affidavit, pursuant to Neb. Rev. Stat. § 48-182 (Reissue 1988), requesting that the cost of a transcript and bill of exceptions be waived. The compensation court, after reviewing Mata's affidavit, denied her request.

In her final assignment of error, Mata complains of the compensation court's refusal to have these costs waived. In relevant part, § 48-182 provides:

> The transcript and bill of exceptions shall be paid for by the party ordering the same, except that upon the affidavit of any claimant for workers' compensation, filed with or before the praecipe, that he or she is without means with which to pay, and unable to secure such means, payment may, in the discretion of the compensation court, be waived as to such claimant and the bill of exceptions shall be paid for by the compensation court in the same manner as other compensation court expenses.

The record reflects that before the three-judge Workers' Compensation Court panel, this case was tried on stipulations and exhibits. As a result, the bill of exceptions is only four pages in length and the court reporter has certified that there was no charge for the bill. A transcript was timely filed with this court. There is no showing in the record as to whether the cost of the transcript has been paid, whether Mata was required to pay for the transcript, or whether the cost of the transcript was waived. Under the circumstances, there is no justiciable issue before this

court in regard to the waiver of the costs of appeal, and Mata's assignment of error in relation thereto has no merit.

## IV. CONCLUSION

The judgment is reversed and the cause remanded to the compensation panel to make a factual finding regarding Mata's ability to speak the English language and to enter an award consistent with that finding. Because the cause is remanded, this court does not reach the issues raised by Mata's second assignment of error. Mata's third assignment of error is without merit. No attorney fees for this appeal are granted, since Mata has failed to increase her award in this court. See, Neb. Rev. Stat. § 48-125 (Reissue 1989); *Carter v. Weyerhaeuser Co.*, 234 Neb. 558, 452 N.W.2d 32 (1990) (denying attorney fees despite possibility of increased award on remand because no increase was achieved in this court).

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

SHANAHAN, J., concurring in part, and in part dissenting.

Although the compensation court's decision must be reversed and this cause remanded for further proceedings, the compensation panel's language in its "AWARD" clearly communicates an egregious error which supplies the true reason for reversal and necessity for further consideration of Angelita Mata's claim for compensation. The compensation court's unfortunate and undeniable mistake of law is evident from the panel's expressions and the underlying record.

Angelita Mata's employment history has been that of heavy manual labor, such as hoeing beet fields, spending many hours winding electrical coils, and moving products in the meatpacking plant where she sustained the disabling injury on which her compensation claim is based. As a result of her injuries, Angelita Mata is unable to stoop, stand for a protracted period, or lift any significant weight.

However, Angelita Mata's limitations are not just physical. By stipulation, the parties have agreed that Angelita is "functionally illiterate," even though the majority, strangely enough, has concluded that "the parties dispute the degree of Mata's proficiency in [the English] language." Angelita is

unable to read a newspaper or understand a great deal of spoken English. After the accident at Western Valley Packing, Angelita enrolled in a course for basic English so that she might become "more hireable, more able to find employment." According to her language instructor, Angelita cannot "do all the basics in the English language," but she has been "sincere in her efforts" to learn basic English. The language course is comparable to English instruction at the first grade level and utilizes "pictures a lot" and "a lot of visual aid." During a vocational evaluation, Angelita Mata "[d]emonstrated a below average level of general learning ability."

Dean Ventor, a vocational consultant versed in questions of "employability" for manual labor, reviewed data concerning Angelita, including all medical information, and concluded that Angelita could not return to her work at Western Valley Packing. Ventor then expressed the opinion that some forms of "sedentary unskilled work" were open to a woman of Angelita's physical limitations, but "[w]hen you throw in [Angelita's] inability to converse in English, a large percentage of those jobs wouldn't work . . . . [T]here wouldn't be any jobs that she could do." Angelita's unemployability became an established fact "because of [her] problems with English." When only Angelita's physically injured condition was considered, she had sustained a 50-percent loss of earning power. However, when Angelita's language limitation was considered in combination with her physical condition, Angelita sustained an "earning power loss" which was, in Ventor's words, "over 90 percent, it would be near total." Consequently, Angelita, viewed from the standpoint of her physical impairment and language limitation, was, according to Ventor, "unemployable." As further expressed by Ventor, Angelita's unemployability is underscored by the fact that the "major employer of unskilled sedentary labor" in the vicinity of Angelita's home will not "hire anyone unless they have an understanding of the English language and can read the instructions that they have on the different machines that they tend as well as they want an ability to give the people instructions on jobs and make sure they understand them."

With that background entrenched in the evidence, the

majority ponders, puzzles, and settles into indecision about the meaning of the compensation panel's conclusion: "In determining the extent of plaintiff's permanent loss of earning power, the Court has disregarded and excluded the effect thereon, if any, of plaintiff's educational and English language deficiencies." When the compensation panel's somewhat serpentine syntax is uncoiled, the panel actually concluded: Although Angelita Mata has deficiencies in education and English language skill, we, the compensation panel, have elected to pay no attention whatsoever to such deficiencies in deciding the extent of Angelita Mata's loss of earning power. If the preceding language of the compensation panel was not clear enough concerning the effect of Angelita's educational and linguistic deficiencies, the panel further spoke through its action in finding that Angelita had a "50 per cent permanent loss of earning power," the exact percentage of loss resulting from an impairment of physical function only, and then calculating compensation benefits on the basis of the 50-percent loss of earning power. Any shadow of doubt about the panel's factual conclusion concerning the existence and effect of Angelita Mata's deficiencies in education and language skill vanishes in light of the panel's statement: "The plaintiff does not appear to be a fit subject for vocational rehabilitation via formal academic classwork or training." Therefore, although Angelita Mata's limitations in education and English language skill disqualified her from rehabilitation which required some form of schooling, the panel chose not to consider the effect of those deficiencies in relation to Angelita Mata's loss of earning power or unemployability which the panel found was evidentially established.

"An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled." *Lee v. Minneapolis Street Railway Co.*, 230 Minn. 315, 320, 41 N.W.2d 433, 436 (1950).

Also, according to Professor Arthur Larson, "Compensable disability is generally defined as inability, as the result of a work-connected injury, to perform or obtain work suitable to

claimant's qualifications and training." 2 A. Larson, The Law of Workmen's Compensation § 57.22(a) at 10-129 (1989).

Hence, the test for a worker's employability after a compensable injury is whether the worker can compete in the open and normal labor market for the worker's services.

Among factors which must be considered in determining whether a worker is totally disabled are the worker's mental capability, see *Tilghman v. Mills*, 169 Neb. 665, 100 N.W.2d 739 (1960), and the worker's education or lack of education. See, *Sherwood v. Gooch Milling & Elevator Co.*, 235 Neb. 26, 453 N.W.2d 461 (1990); *Krijan v. Mainelli Constr. Co.*, 216 Neb. 186, 342 N.W.2d 662 (1984). See, also, *Guyton v. Irving Jensen Co.*, 373 N.W.2d 101, 103 (Iowa 1985): "Industrial disability means reduced earning capacity. Bodily impairment is merely one factor in gauging industrial disability. Other factors include the worker's age, intelligence, education, qualifications, experience, and the effect of the injury on the worker's ability to obtain suitable work."

Consequently, the composite worker, as a person with a compensable disability, must be considered in relation to the worker's employability in an established competitive labor market lest there be descent to the view that a worker's disability is gauged only in terms of mechanical malfunction in a machine, animated appliance, or automaton.

Unfortunately, the compensation court, notwithstanding its explicitly specific finding that Angelita Mata had deficiencies in education and English language skill, elected to pay no attention whatsoever to those deficiencies in Angelita Mata as a composite worker. Ordinarily, this court does not refer to the findings at the "one-judge" or initial hearing in the compensation court, but there is some reassurance garnered from the judge's expression at the first hearing, namely: "If [one] also takes into account the plaintiff's language limitations, her earning power loss . . . exceeds 90 per cent. It appears that the plaintiff's language limitations are real and the Court has little difficulty in determining that the plaintiff's earning power loss is complete."

The compensation panel's conclusion concerning Angelita Mata's loss of earning power clearly expresses a judicial election

to pay no attention to the factually established deficiencies in Angelita's education and language skill. That election is a disregard for Nebraska law pertaining to a worker's employability and thereby constitutes error as a matter of law. Even if the compensation panel had considered Angelita Mata's deficiencies in education and language and concluded that her deficiencies had no effect on her employability, such factual conclusion would have been clearly erroneous and would have necessitated a reversal in any event.

Therefore, the compensation court's decision must be reversed and Angelita Mata's cause remanded so that the compensation court can and shall consider the effect of Angelita Mata's deficiencies in education and English language skill in conjunction with her already established "50 per cent permanent loss of earning power."