FERN BENISH KAUFMAN, APPELLANT, V. CONTROL DATA AND TRAVELERS INSURANCE CO., APPELLEES.

465 N.W.2d 727

Filed February 15, 1991.   No. 90-133.

E. Terry Sibbernsen, of Welsh & Sibbernsen, for appellant.

Dennis R. Riekenberg, of Cassem, Tierney, Adams, Gotch & Douglas, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

Fern Benish Kaufman appeals from the judgment of the Workers' Compensation Court on rehearing. Benish Kaufman, in the compensation court, claimed that as a result of a work-related injury she sustained February 1, 1982, she was totally disabled and is entitled to benefits under the Nebraska workers' compensation laws. The court found that Benish Kaufman was only partially disabled and suffered a 50-percent loss of earning capacity.

Benish Kaufman disputes the compensation court's findings that she was partially disabled and suffered a 50-percent loss of earning capacity. She claims that she continues to be temporarily totally disabled because she suffers emotional problems stemming from her back pain and that only when she, through a pain-management program, has learned to deal with the emotional side effects of her injury can the extent of her injury be evaluated. We disagree and affirm the decision of the compensation court on rehearing.

The findings of fact made by the compensation court will not be set aside on appeal unless clearly wrong. *Mata v. Western Valley Packing*, 236 Neb. 584, 462 N.W.2d 869 (1990). As the trier of fact, the compensation court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id.*; *Canas v. Maryland Cas. Co.*, 236 Neb. 164, 459 N.W.2d 533 (1990). The findings of fact made by the compensation court after rehearing shall have the same effect as a jury verdict in a civil case and will not be set aside unless clearly wrong. *Martinez v. Nebraska Dupaco*, 235 Neb. 720,

457 N.W.2d 285 (1990). Whether an injured worker is totally disabled is a question of fact to be determined by the compensation court, whose finding may be reversed on appeal only if it is clearly wrong. *Mata v. Western Valley Packing, supra.*

As she was leaving work at Control Data on February 1, 1982, Benish Kaufman slipped and fell in the parking lot used by Control Data employees. At the time of the injury, Benish Kaufman suffered pain in her lower back and buttocks. She consulted Dr. Martin Mancuso, her family doctor, who diagnosed her as suffering a lumbar strain injury. Benish Kaufman returned to work the next day and continued to work until June 21 of that year, when her back pain became too severe to allow her to continue. She returned to work for 11 weeks, from October 5 to December 20, on a part-time basis. She returned to work again on January 4, 1983, and continued to work until March 5, 1985, when she stopped working because of the increasing pain of her injuries. In 1983, Dr. Mancuso referred her to an orthopedic surgeon, who diagnosed her as suffering from a herniated disk. During this same time period she was undergoing physical therapy and taking pain medication as prescribed by Dr. Mancuso. Benish Kaufman has not worked since March 1985.

In 1985, Mancuso referred her to a neurosurgeon, Dr. Daniel McKinney, who performed surgery on Benish Kaufman on March 18, 1985, for removal of the herniated disk. The surgery did little to relieve Benish Kaufman's pain, and a second surgery was performed on October 23, 1985, to correct a recurrent herniated disk in the same area. The second surgery did not eliminate Benish Kaufman's symptoms, and she continued to suffer pain in her lower back and left leg.

In September 1986, Benish Kaufman was involved in a car accident for which she sought treatment from Dr. Mancuso. Benish Kaufman is presently involved in litigation concerning the accident and gave deposition testimony regarding injury to her back and lower body. In her deposition, she stated that her pain sensation was much worse after the accident, and she experienced pain in her right back and leg that she did not have before the accident. In April 1989, she also suffered a heart

attack and at the time of this action was undergoing cardiac rehabilitation under the direction of Mancuso.

In July 1988, Travelers Insurance Co. requested that Benish Kaufman see Dr. Frank LaMarte for an evaluation as to her suitability for a low back rehabilitation program offered at Back Care, Inc. LaMarte examined Benish Kaufman, performed various tests on her, and determined that she would benefit from the program. Benish Kaufman then began a 10- to 12-week isokinetic rehabilitation program at the end of July 1988. Benish Kaufman continued in the program until about September 7, 1988, at which time LaMarte terminated her participation in the program because she had missed several sessions, and LaMarte felt she was not making sufficient effort toward her rehabilitation. Benish Kaufman claimed the treatment was very painful and made her symptoms worse. At the present time Benish Kaufman continues to be treated by Dr. Mancuso for her heart condition and undergoes periodic evaluation of her back injury.

The appellees have paid Benish Kaufman's medical expenses in the amount of $37,626.09. They have also paid temporary total disability benefits at the rate of $180 per week for the following periods: June 21 to October 4, 1982; December 21, 1982, to January 4, 1983; and March 5, 1985, to November 14, 1988, inclusive, equaling $210^{1}/_{7}$ weeks, in the total amount of $37,825.71. Appellees have also paid temporary partial disability benefits for the period between October 5 and December 20, 1982, totaling $1,214.40, and permanent partial disability benefits at the rate of $33.26 per week from November 15, 1988, to the present time.

Five expert witnesses testified by deposition following rehearing. Dr. Mancuso testified on behalf of the appellant that in his opinion, Benish Kaufman had reached a stable level and would not significantly improve with physical therapy. He said that her symptoms were a direct result of her February 1, 1982, accident at Control Data and that she sustained a 35- to 40-percent permanent disability to the body as a whole due to that injury. He also testified that she is temporarily and totally disabled due to the accident and will be restricted from performing any work that requires lifting, stooping, prolonged

standing or sitting, or bending. Mancuso also testified that Benish Kaufman may benefit from physical therapy, and possibly surgery in the future if her back condition changed. Mancuso stated that following Benish Kaufman's car accident in September 1986, she experienced an exacerbation of the symptoms she had previously been experiencing and that it was approximately 12 months before she returned to "base line," or the condition she was in before the accident. He testified that her inability to work during this period was not due to any additional or permanent injury she suffered as a result of the car accident, but that the accident merely made her already existing symptoms worse.

Dr. McKinney, testifying on behalf of the appellant, concluded that Benish Kaufman's herniated disk was caused by her February 1, 1982, fall. He stated in his opinion that she sustained a permanent partial disability of 25 percent of the body as a whole and that she would be restricted from activities that require anything more than moderate lifting; a great deal of walking, standing, or sitting; and bending or stooping. He also stated that she would need further medical treatment in the form of physical therapy to help her be more comfortable and that if her condition remained static, he would continue seeing her on a yearly basis only. He did not anticipate any further surgical procedures.

Alfred Marchisio, a vocational rehabilitation counselor, also testified on behalf of the appellant. He concluded that Benish Kaufman would not be able to return to her prior job because of the medical restrictions placed on her. He stated that she had functional limitations and that she had not regained the necessary physical functioning required to return to gainful employment. He also testified that she had sustained a permanent impairment to her earning capacity of approximately 40 percent. He also testified that Benish Kaufman was a candidate for vocational rehabilitation in the form of direct placement or on-the-job training.

Dr. LaMarte, a specialist in occupational medicine, testified on behalf of the appellees. LaMarte concluded that Benish Kaufman's condition could improve if she made more effort toward rehabilitation, but if she does not, then she has reached

a point of maximum medical improvement. LaMarte also testified that she would be able to return to employment subject to restrictions on lifting, standing, sitting, twisting, and bending. He concluded that she sustained an 11-percent permanent partial disability to the body as a whole.

Hugh Irwin, a rehabilitation consultant testifying on behalf of the appellees, determined that it was possible for Benish Kaufman to return to work subject to her doctors' restrictions. He stated that specific positions such as cashiering, entry-level clerical, and light industrial would fit within her restrictions. He also stated that there was a fairly strong job market for these positions in the Omaha area. He said that the salary ranges for these positions would start at minimum wage to $4.50 per hour. He stated that given the extent of her injury, she had sustained a 45- to 55-percent loss of earning capacity.

Total disability exists when an injured employee is unable to earn wages in the same or similar kind of work he or she was trained or accustomed to perform, or in any other kind of work which a person of the employee's mentality and attainments could perform. *Kleiva v. Paradise Landscapes*, 230 Neb. 234, 430 N.W.2d 550 (1988).

In this case, the expert testimony concerning the extent of Benish Kaufman's injuries is generally in accord. Her primary care physician, Dr. Mancuso, and her surgeon, Dr. McKinney, agreed that her injuries have become to some degree stable and that she would need some future medical treatment in the form of physical therapy to help her be more comfortable. The doctors agreed that she would probably not benefit from future surgery or medical treatment other than physical therapy. The doctors also agreed that she has sustained permanent partial disability to the body as a whole in the range of 25 to 40 percent and that she would be restricted from performing any work that required prolonged standing or sitting, stooping, or bending. Neither doctor testified that she would be precluded from working provided the work fell within the restrictions placed on her. Dr. LaMarte stated that Benish Kaufman's condition might have improved if she had made a greater effort during isokinetic therapy, but since she did not make the effort, her condition had reached a level of maximum medical

improvement. He also agreed with Mancuso's and McKinney's work restrictions.

Both vocational rehabilitation experts concluded that Benish Kaufman had suffered a loss of earning capacity in the 40- to 55-percent range and would be subject to the work restrictions outlined above. However, one expert testified that she was a good candidate for vocational rehabilitation in the form of direct placement or on-the-job training. The other expert also determined that it was possible for Benish Kaufman to return to work under restriction and that there were jobs available in the Omaha area that would fit within these restrictions at a starting salary of minimum wage to $4.50 per hour. While these jobs are not identical to the position Benish Kaufman held prior to her injury, they are not the type of piecemeal, odd-job positions Benish Kaufman claims are the only positions available to her. Benish Kaufman alleges that her ability to obtain employment is "problematic at best" and that the permanency and compensation for the positions outlined by the rehabilitation experts is trivial. Consequently, she claims her disability is total. We agree that the compensation for the available positions is not at the level of her former job, but that is because Benish Kaufman has suffered a substantial loss of earning capacity for which she will be compensated under the Nebraska workers' compensation laws. We are unable to determine how Benish Kaufman has concluded that her ability to obtain any one of the available positions is problematic when there is no evidence in the record that she has, at any time since 1985, sought employment. Benish Kaufman's employment history is generally one of manual, unskilled labor. The available positions testified to by the rehabilitation expert fit within this category.

Any future medical treatment for Benish Kaufman will be in the form of physical therapy to make her more comfortable, not to improve her injuries themselves. We interpret this to mean that Benish Kaufman's injuries have become permanent. The rehabilitation experts agreed that she was and is able to return to work subject to the doctors' restrictions and that she has suffered a permanent *partial* disability to the body as a whole. Neither the medical experts' nor the rehabilitation

experts' testimony supports Benish Kaufman's claim that she continues to be temporarily totally disabled. There is no evidence in the record that Benish Kaufman suffers from emotional difficulties resulting from her back pain, or that these difficulties, if they exist, have exacerbated her injuries. The compensation court's decision to declare her permanently partially disabled with a 50-percent loss of earning capacity is in agreement with the evidence in this case. The judgment of the court is affirmed.

AFFIRMED.