ARTHUR CARTER, APPELLANT, V. WEYERHAEUSER COMPANY, APPELLEE.

452 N.W.2d 32

Filed February 23, 1990.    No. 89-453.

Thomas F. Dowd, of Thomas F. Dowd & Associates, for appellant.

John F. Thomas and Geoffrey V. Pohl, of McGrath, North, Mullin & Kratz, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Arthur Carter appeals Workers' Compensation Court holdings (1) terminating his temporary total disability benefits, (2) denying him a monetary penalty for his employer's delay in paying workers' compensation benefits, and (3) denying him a new trial on a claim of newly discovered evidence. We affirm in part, reverse in part, and remand to the Workers' Compensation Court with directions.

Appellant contends that on rehearing, a three-judge panel erred (1) in finding that he reached maximum medical improvement on October 19, 1987, thereby discontinuing his entitlement to temporary total disability benefits as of such date; (2) in failing to find that he was entitled to temporary total disability benefits pursuant to Neb. Rev. Stat. § 48-121(5) (Reissue 1988) while he was undergoing vocational rehabilitation; (3) in failing to award him a waiting penalty as a result of the discontinuance of all disability benefits on and after January 10, 1988; and (4) in failing to grant him a new trial pursuant to Neb. Rev. Stat. § 25-1142 (Reissue 1989).

We first note that the rehearing in this case before the three-judge panel was held October 26, 1988, at which time live testimony and exhibits were received. At the close of the hearing, the parties waived oral argument and agreed to submit written arguments within 10 days. A posthearing deposition was taken and received in evidence on November 10, 1988. For some reason not explained in the record, the award on rehearing was not entered until April 13, 1989, more than 5 months from the date the last evidence was received by the panel.

It is uncontested that on September 13, 1986, Carter, while performing his duties as a bailer operator, injured his back in an

accident arising out of and in the course of employment with the appellee, Weyerhaeuser Company. It is also uncontested that appellant was temporarily totally disabled from the time of the September 13 injury until at least October 19, 1987. Weyerhaeuser paid temporary total disability benefits to Carter from September 14, 1986, to January 10, 1988.

With respect to his work-related injury, appellant was diagnosed by Dr. Bernard L. Kratochvil as having a lumbar strain. Treatment included medication, physical therapy, bed rest, and a caudal block.

In 1987 and 1988, appellant was offered job placement services with Mindy Stockfeld of the State of Nebraska's Division of Rehabilitation Services and by Jack Greene, a Quality Rehabilitation Services counselor who was retained by Weyerhaeuser. A plan of direct job placement with the employment goal of materials control was developed for the appellant. No program of vocational education, formal vocational training, or retraining services was developed or offered to Carter. At the time of rehearing, appellant's attempts in attaining stable employment had been unsuccessful.

The panel on rehearing found that Carter had reached maximum medical healing on October 19, 1987, the date that he was given a provisional release to return to work. The panel concluded that after October 19, Carter was not entitled to temporary total disability. Weyerhaeuser was given credit toward its obligation to pay permanent partial disability payments for the overpayment of temporary total disability benefits made to the appellant from October 20, 1987, to January 10, 1988. The panel noted that while it appeared that Carter had some earning power loss beginning October 20, there was nothing to measure that earning power loss until the deposition of Greene was taken subsequent to the rehearing. Accordingly, the panel found that a reasonable controversy existed concerning Carter's loss of earning power and that he, therefore, was not entitled to additional compensation for waiting time for the period after October 20.

The three-judge panel did not specifically address appellant's contention that he was entitled to continuing payments for temporary total disability while he was undergoing vocational

rehabilitation in the form of direct job placement.

Carter first contends the panel on rehearing erred in finding that he had reached maximum medical improvement on October 19, 1987. The question of whether an injured employee has reached maximum medical improvement is a question for the trier of fact. Findings of fact by the Nebraska Workers' Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong. *Behrens v. American Stores Packing Co., ante* p. 25, 449 N.W.2d 197 (1989). In testing the sufficiency of the evidence to support the findings of fact made by the Nebraska Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party. *Id.* Regarding facts determined and findings made after rehearing in the Nebraska Workers' Compensation Court, Neb. Rev. Stat. § 48-185 (Reissue 1988) precludes the Supreme Court's substitution of its view of facts for that of the compensation court if the record contains evidence to substantiate the factual conclusions reached by the compensation court. As the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Osborne v. Buck's Moving & Storage*, 232 Neb. 752, 441 N.W.2d 906 (1989); *Gardner v. Beatrice Foods Co.*, 231 Neb. 464, 436 N.W.2d 542 (1989).

Weyerhaeuser points to Dr. Kratochvil's deposition testimony that he did not believe appellant's condition had improved over his course of treatment. He stated, "[Carter] had gotten to the point where the medical treatment was not helping him. . . . In other words, the medication, physical therapy, caudal blocks were not of any particular value." Weyerhaeuser questioned Dr. Kratochvil as to the point at which appellant had reached maximum improvement.

[Weyerhaeuser:] Okay. I guess — can you tell me, by looking at your records, Doctor, when he would have reached his maximum improvement, as good as he's going to get?

[Dr. Kratochvil:] I don't think there was much in the way of treatment after April of '87. He saw us on several

occasions, but there was no — there was nothing different in the way of his treatment.

[Weyerhaeuser:] Okay. So, would it be a fair statement that as of April of '87 he had reached maximum improvement? I mean he was as good as he was going to get?

[Dr. Kratochvil:] I think so.

Appellant contends that he had not reached maximum medical improvement and points to Dr. Kratochvil's depositional testimony concerning treatment rendered to appellant in September 1987. Dr. Kratochvil stated, "Actually, as far as when did he reach maximum medical improvement, I'm not sure that he ever has." Dr. Kratochvil immediately went on to say, however, "But we get to a point where we say the treatment that we have rendered so far is the best we can do and from then on it's probably not going to do a lot."

Although Dr. Kratochvil stated that there were attempts made to improve Carter's condition from April 1987 to September 1988, these attempts did not make Carter's condition any better. In fact, Dr. Patrick W. Bowman, an associate of Dr. Kratochvil's, issued appellant a "provisional return to work release" effective October 19, 1987. Given these facts, we cannot say that the panel was clearly wrong in concluding that Carter had reached his maximum medical improvement on October 19. When a worker has reached maximum recovery, the remaining disability is permanent and such worker is no longer entitled to compensation for temporary disability. *Gardner v. Beatrice Foods Co., supra.*

Appellant contends, however, that even if he did reach maximum medical improvement, he is still entitled to temporary total disability payments by reason of being in vocational rehabilitation in the form of direct job placement. Section 48-121(5) provides that an "employee shall be entitled to compensation from his or her employer for temporary disability while undergoing rehabilitation." Carter contends that the plan of direct job placement instituted by the State of Nebraska's Division of Rehabilitation Services constitutes vocational rehabilitation. In support of that contention, appellant points to Neb. Rev. Stat. § 48-162.01(3) (Reissue

1988), that states in part:

> When as a result of the injury an employee is unable to perform work for which he or she has previous training or experience, he or she shall be entitled to such vocational rehabilitation services, including retraining and job placement, as may be reasonably necessary to restore him or her to suitable employment.

From a review of the record, it is clear that appellant presented this issue to the panel. However, the panel did not specifically address appellant's contention in its award. The panel apparently concluded that a plan of direct job placement alone does not constitute vocational rehabilitation, since it terminated Carter's temporary total disability benefits.

We have not passed upon the question of whether a plan of direct job placement alone constitutes vocational rehabilitation, thus entitling a worker to temporary disability benefits. In addressing this issue, it should be remembered that it has long been the policy of this court to construe the Nebraska Workers' Compensation Act liberally so that its beneficent purposes may not be thwarted by technical refinements of interpretation. *Marlow v. Maple Manor Apartments*, 193 Neb. 654, 228 N.W.2d 303 (1975). The primary purpose of the Nebraska Workers' Compensation Act is to insure an employee against accidental injury arising out of and in the course of his employment. To accomplish this purpose, the act should be construed not to find that liability exists without the required quantum of proof, but to include within the protection of the act by liberal interpretation all injuries arising out of and in the course of employment which the act does not clearly exclude. Strict interpretation should not be resorted to in order to accomplish such exclusion. *Union Packing Co. v. Klauschie*, 210 Neb. 331, 314 N.W.2d 25 (1982).

Section 48-162.01(3) provides, in pertinent part, that an employee shall be entitled to vocational rehabilitation services, including retraining and job placement. This language is in accord with the stated purpose of § 48-162.01, that being the restoration of an injured employee to gainful employment. While the statutes are open to varied interpretations, a liberal construction of § 48-162.01 compels us to conclude that a plan

of direct job placement, when prescribed as the only form of appropriate vocational rehabilitation for an injured employee, is vocational rehabilitation within the meaning of § 48-121(5), therefore entitling the injured employee to temporary disability benefits.

Weyerhaeuser relies on authority from other jurisdictions to support its contention that a plan of direct job placement alone cannot constitute vocational rehabilitation. Those authorities are not helpful because of the difference in language of the various workers' compensation statutes involved.

The rehearing panel has already found that appellant is unable to perform work for which he has previous training and experience. Because we hold that a plan of direct job placement is a form of vocational rehabilitation, it now becomes necessary for the rehearing panel to make factual findings as to whether appellant has reasonably participated in his plan of vocational rehabilitation. See, *Heironymus v. Jacobsen Transfer*, 215 Neb. 209, 337 N.W.2d 769 (1983); § 48-162.01(6). If the panel finds that appellant has not refused to participate in his plan of direct job placement without reasonable cause, he should be awarded benefits for temporary disability in accordance with § 48-121(5).

Appellant's third assignment of error contends the rehearing panel erred in failing to award him a waiting penalty pursuant to Neb. Rev. Stat. § 48-125 (Reissue 1985) by reason of Weyerhaeuser's discontinuance of all disability benefits after January 9, 1988. The panel noted that while it appeared that Carter had some earning power loss beginning October 20, 1987, the point in time when appellant had reached maximum medical improvement, there was nothing to measure that earning power loss until the deposition of Greene was taken subsequent to the rehearing. Accordingly, the panel found that a reasonable controversy existed concerning that earning power loss, and thus, appellant was not entitled to additional compensation for waiting time for the period beginning October 20, 1987.

[F]or the purpose of § 48-125, and as some criteria to determine whether a reasonable controversy exists between an employer and employee, a reasonable

controversy may exist: (1) if there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the Nebraska Workers' Compensation Court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or part. To avoid the payments assessable under § 48-125, an employer need not prevail in opposition to an employee's claim for compensation, but must have an actual basis, in law or fact, for disputing the employee's claim and refraining from payment of compensation.

*Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 784-85, 408 N.W.2d 280, 288 (1987). "Whether a reasonable controversy exists pertinent to § 48-125 is a question of fact." *Mendoza, supra* at 783, 408 N.W.2d at 288.

Given the circumstances surrounding the measure of Carter's earning power loss, we cannot say the panel's conclusion that a reasonable controversy existed was clearly wrong. We further note that the question of whether a plan of direct job placement alone constituted vocational rehabilitation is one of first impression and, in and of itself, creates a reasonable controversy concerning entitlement to workers' compensation benefits.

Appellant's final assignment of error claims that the panel erred in failing to grant him a new trial pursuant to § 25-1142.

On April 12, 1989, 5 months after rehearing, Dr. Bowman performed a lumbar diskogram on Carter. As a result of the postrehearing diskogram, Dr. Kratochvil modified appellant's diagnosis from lumbar strain to internal lumbar disk disruption. Relying on this diagnosis, appellant filed a motion for new trial or, in the alternative, modification of the award on rehearing. In his motion, appellant claims that the internal disk disruption "constitutes material evidence which could not, with reasonable diligence, have been discovered and produced at the Rehearing on October 26, 1988."

In ruling on Carter's motion, the panel stated that "to the extent the plaintiff is asking the Court to reach different findings of fact from the same evidence, such motion should be denied." The panel further stated that appellant could seek modification provided that the requisites of Neb. Rev. Stat. § 48-141 (Reissue 1988) were met, "but such modification should be heard by one judge of this Court pursuant to an application filed at a later time."

We need not address appellant's contention that the medical evidence adduced from the diskogram entitled him to a new trial. The Nebraska Workers' Compensation Act does not provide for a motion for a new trial in the Nebraska Workers' Compensation Court. We are aware that in *Battiato v. Falstaff Brewing Corp.*, 212 Neb. 474, 323 N.W.2d 105 (1982), this court implied that a motion for new trial may be proper in the Nebraska Workers' Compensation Court. The implication was dictum and is disavowed. The *Battiato* court based its conclusion on two workers' compensation cases tried in district courts, a procedure that no longer exists under Nebraska law. As the panel noted, appellant is entitled to seek modification of his award on rehearing pursuant to § 48-141, provided the statutory prerequisites for modification are met.

As Carter has failed to achieve an increase in his award in this court, he is not entitled to attorney fees as authorized in § 48-125.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.