DeLane Luehring, appellee, v. Tibbs Construction Company and Bituminous Insurance Companies, appellants.

457 N.W.2d 815

Filed July 20, 1990.   No. 89-1262.

Jon S. Reid, of Kennedy, Holland, DeLacy & Svoboda, for appellants.

Robert E. Zielinski, of Byrne, Rothery, Lewis, Tubach, Zielinski & Peterson, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Plaintiff-appellee, DeLane Luehring, brought this action when defendants-appellants, Tibbs Construction Company and Bituminous Insurance Companies, reduced his workers' compensation benefits. Defendants appeal from the judgment granting Luehring total disability benefits. Their three assignments of error combine to assert that the compensation court erred in finding (1) that Luehring continues to be totally disabled as a result of his work-related accident and (2) that efforts at vocationally rehabilitating Luehring would have been futile as of the date of the award. We affirm.

The injury which precipitated this action occurred on March 17, 1985, when, in the course of his employment with Tibbs Construction, Luehring, who is 49 years old and has but a high school education, fell approximately 20 feet from a ladder, fracturing his left hip and rupturing a disk in his back. Luehring suffered from low back pain after the fall, and a myelogram later revealed "a large defect at the L4-5 with possibly an additional defect at L3-4." On March 24, 1986, Luehring underwent a "laminectomy and disc excision L4/L5 on the right," but his symptoms were not alleviated by this procedure. Luehring then underwent a "posterolateral L4-5 spine fusion" on April 29, 1987. While this procedure did not eliminate his symptoms, Luehring did become involved in rehabilitative activities after the latter operation.

The record indicates that Luehring has been hospitalized with low back pain on at least two occasions since his April 29, 1987, operation, including once in May 1988 after he experienced a "sharp pain in the right low back" while changing a tire on his wife's car, and at least once in March 1989 when he was unable to "ambulate" after the "sudden onset of severe low back pain" occurring when he lifted a "small package" above his shoulders.

A May 11, 1988, letter to rehabilitation consultant Gail Leonhardt from Luehring's treating physician, Dr. H.R. Woodward, recites that Luehring had by that time reached maximum medical improvement, had a 30-percent permanent

partial disability of the body as a whole, and should be able to proceed with vocational rehabilitation for a job which would not require the lifting of more than 35 pounds.

Woodward later asked that Luehring complete a "functional capacities assessment." An October 12, 1988, "Work Capacity Evaluation" prepared by Don Anderson, who is apparently a physical therapist at Immanuel Medical Center in Omaha, states, in part:

Based on observations of the patient's behavior and comparison of the actual data, I would conclude that the patient probably did not put forth his maximum effort within his pain tolerance throughout this evaluation. For example, the patient states he is unable to assume the testing position for the static strength leg test. He was, however, able to assume the exact same position and bend even further with his knees for the dynamic floor to knuckle lift. This indicates inconsistency in the patient's behavior and one has the tendancy [sic] to assume that the patient could have performed better than the actual numbers indicate. The patient is consistent in scoring in the lower 5-10 percentile of healthy males, however, I am unsure he gave maximum effort on each test.

After the work capacity evaluation resulting in the foregoing report, Woodward again wrote to Leonhardt, on January 16, 1989, observing that it was difficult to determine Luehring's disability and that the foregoing work capacity evaluation had not been very helpful. He then went on to state:

Given [Luehring's] overall condition and my observation of him and knowledge of his treatment, as well as the results of the testing procedures, I would estimate [Luehring] should be able to be involved in light to moderate work activities which should allow him to lift an occasional 30 to 35 pounds and more frequently 10 to 15 pounds. I would ask him to avoid vigorous or uncontrolled twisting, turning and bending. Prolonged standing and walking would probably cause him to be symptomatic as well.

However, in another letter, written to Luehring's counsel on March 27, 1989, Woodward stated, in part:

In regard to your specific questions, [Luehring's] hospitalization of 3/5/89 does not change my opinion of his permanent partial impairment of 30% of the whole man. This is, in fact, relatively generous considering the objective findings. I have not changed my opinion regarding his ability to perform light to moderate work activity based on objective findings. *I think it is unlikely that [Luehring] could cause "further injury to himself" by proceeding with the activities outlined above. He may not be able to tolerate this due to discomfort, but from an objective standpoint there is no evidence that he would cause any further damage to his low back.*

(Emphasis supplied.)

Leonhardt prepared, apparently on January 23, 1989, an "Appraisal of Work Readiness" regarding Luehring, which reads, in part:

Throughout the whole rehabilitation process and especially since . . . Woodward's indication of Luehring's having reached Maximum Medical Improvement, attempts were made to counsel with Luehring regarding future work alternatives. This included options of on-the-job training, training and development of his own business, etc. In all of these conversations, Luehring stated that there was absolutely nothing he would be able to do. He stated that occasionally he has good days; however, the least bit of work activity can have him down on his back for two days at a time. He was totally unresponsive to rehabilitation efforts, stating repeatedly that there was nothing he would be able to do.

Based upon . . . Woodward's observations . . . Luehring should be able to perform work activity ranging in weight from 10-35 pounds. It is indicated that 10-15 pounds could be done frequently. . . . Based upon this information, there are jobs which Luehring is capable of performing.

At trial, Luehring testified that his daily activities include light household chores, going for walks, "tinker[ing]" with a car, and "small things like that." Luehring testified that he begins to experience back pain after 5 to 30 minutes of activity and that he must then lie down. According to Luehring, the

length of time that he must lie down in order to relieve his back pain is variable, ranging from "an hour or two" to "a day or two." Luehring's testimony also indicates that he experiences back pain when he remains in a seated position for extended periods of 30 minutes or longer.

Leonhardt testified he had found jobs which Luehring could perform. However, cross-examination elicited the following exchange:

Q How many of those employers are going to hire . . . Luehring, if he has to go in the hospital for a day or two at a time, he has to rest every couple of hours, with any type of activity, any prolonged sitting, any standing, walking, if — He may have to be off the job for two or three days at a time. How many of those employers that you've looked at would be willing to hire . . . Luehring?

A I would suppose none of them.

In addition to the foregoing, a "Loss of Earning Capacity" report prepared by rehabilitation consultant Lynne Easterday concluded that based on the estimated restrictions outlined by Woodward, Luehring is no longer able to compete for approximately 50 to 60 percent of the jobs for which he had the opportunity prior to his injury, but that based on Luehring's own assessment of his physical capacities, he is no longer able to compete for approximately 80 to 100 percent of the jobs.

In its judgment the compensation court stated:

[Luehring] exhibits certain objective symptoms but also has subjective complaints which, if believed, renders [sic] [him] unable to engage in any substantially remunerative employment. The Court believes that [Luehring] is truthful with respect to these subjective complaints.

. . . .

The Court does not believe that [Luehring] has failed to cooperate in efforts at rehabilitation. [His] physical and intellectual limitations lead the Court to conclude that vocational rehabilitation at this time would be futile. Accordingly, the Court makes no award of vocational rehabilitation presently, but will allow the parties to bring that issue before the Court at a later time if [Luehring's] physical condition changes so as to allow him to

participate in some form of vocational rehabilitation training.

Defendants' first summarized assignment of error alleges that the compensation court incorrectly found that Luehring continues to be totally disabled. In making this assertion defendants state: "The plaintiff has the burden of proving the nature *and extent* of his claimed disability, and where the injury is not of an objective nature the disability must be established by expert medical testimony." (Emphasis supplied.) Brief for appellants at 9.

Defendants cite the following language from *Osborne v. Buck's Moving & Storage*, 232 Neb. 752, 754, 441 N.W.2d 906, 907 (1989):

"'Unless the character of an injury is objective, that is, an injury's nature and effect are plainly apparent, an injury is a subjective condition, requiring an opinion by an expert to establish the causal relationship between an incident and the injury as well as any claimed disability consequent to such injury.'"

Defendants then state: "In this case . . . Luehring suffered a lower back injury which was not plainly apparent. His current complaints are primarily of pain, as such, his condition is subjective requiring expert testimony or medical evidence to establish the nature and extent of his claimed disability." Brief for appellants at 9.

Regardless of whether Luehring's injury is "plainly apparent" in this case, the medical evidence contained in the record clearly shows that his condition was caused by the injury which arose out of and in the course of his employment. The thrust of defendants' argument, however, is that the opinion of a medical expert is required to show not only the cause of a claimed disability, but also the *extent* of the disability. Contrary to such an assertion, once the cause of a disability has been established, this court has allowed the compensation court to consider the testimony of the claimant in determining the extent of the claimant's disability. See, *Sherwood v. Gooch Milling & Elevator Co., ante* p. 26, 453 N.W.2d 461 (1990); *Kalhorn v. City of Bellevue*, 227 Neb. 880, 420 N.W.2d 713 (1988).

In the present case, Woodward provided evidence that

Luehring would not further injure himself by engaging in limited activity, but qualified that conclusion by stating: "He may not be able to tolerate this due to discomfort, but from an objective standpoint there is no evidence that he would cause any further damage to his low back." Luehring testified that he begins to experience back pain after 5 to 30 minutes of activity and that he must then lie down in order to relieve the pain.

Citing such evidence, defendants place considerable reliance upon *Kleiva v. Paradise Landscapes*, 230 Neb. 234, 236, 430 N.W.2d 550, 552 (1988), in which this court stated: "In the state of the present record, considering the absence of evidence as to plaintiff's capability to perform other jobs for which he is, or could be made to be, qualified, it would appear that additional evidence addressing this situation is necessary." The *Kleiva* court then remanded the cause for further proceedings.

The present case is easily distinguishable from *Kleiva*. Here, the record contains the reports of two rehabilitation consultants. One report, relying upon Woodward's observations, concludes that "there are jobs which Luehring is capable of performing." The other report concludes: "At worst, based on . . . Luehring's self-reports of his physical capacities, he would . . . be totally disabled for all practical purposes." Thus, the compensation court was faced with conflicting evidence concerning the extent of Luehring's disability and resolved the issue in Luehring's favor.

Under the provisions of Neb. Rev. Stat. § 48-185 (Reissue 1988), findings of fact by the Workers' Compensation Court have the effect of a verdict in a civil case, and its judgment may not be set aside on appeal where there is evidence sufficient to support it. *Sherwood v. Gooch Milling & Elevator Co., supra*; *Carter v. Weyerhaeuser Co.*, 234 Neb. 558, 452 N.W.2d 32 (1990). However, findings made by the Workers' Compensation Court which are not supported by credible evidence and are clearly wrong will be set aside. *Kleiva v. Paradise Landscapes, supra.* In testing the sufficiency of the evidence to support the findings of fact made by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party. *Sherwood v. Gooch Milling & Elevator Co., supra; Carter v. Weyerhaeuser*

*Co., supra.* Moreover, as the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Carter v. Weyerhaeuser Co., supra.*

Total disability in the context of the workers' compensation law does not mean a state of absolute helplessness, but means disablement of an employee to earn wages in the same kind of work, or work of a similar nature, that he or she was trained for or accustomed to perform, or any other kind of work which a person of his or her mentality and attainments could do. *Sherwood v. Gooch Milling & Elevator Co., supra; Krijan v. Mainelli Constr. Co.*, 216 Neb. 186, 342 N.W.2d 662 (1984).

The record in this case presents sufficient evidence to support the compensation court's finding that Luehring is presently totally disabled.

Defendants' second summarized assignment of error alleges that the compensation court erred in finding that efforts at vocationally rehabilitating Luehring would have been futile as of the date of the award. In discussing this assignment of error, defendants contend that Luehring's benefits should be suspended or reduced because Luehring has been "unresponsive" to vocational rehabilitation. In presenting this argument defendants rely upon Neb. Rev. Stat. § 48-162.01(6) (Reissue 1988), which states:

> *Whenever the Nebraska Workers' Compensation Court or judge thereof determines that there is a reasonable probability that with appropriate training, rehabilitation, or education a person who is entitled to compensation for total or partial disability which is or is likely to be permanent may be rehabilitated* to the extent that he or she will require less care and attendance or to the extent that he or she can become gainfully employed or increase his or her earning capacity and that it is for the best interests of such person to undertake such training, rehabilitation, or education, if the injured employee without reasonable cause refuses to undertake the rehabilitation, training, or educational program determined by the compensation court or judge thereof to be suitable for him or her or refuses to be evaluated under

the provisions of subsection (3) of this section, the compensation court or judge thereof may suspend, reduce, or limit the compensation otherwise payable under the Nebraska Workers' Compensation Act.

(Emphasis supplied.)

Although the record suggests that Luehring displayed a pessimistic attitude toward prospects for rehabilitation, it nonetheless supports a conclusion that Luehring did not refuse to cooperate in such efforts. For example, Leonhardt testified that Luehring "cooperated in terms of meeting me for appointments, but as far as — I guess he was really kind of unresponsive to the vocational things, claiming that he couldn't do them." Given the previously discussed evidence of Luehring's physical condition as of the date of the hearing resulting in the judgment from which this appeal is taken, it cannot be said the compensation court was clearly wrong in determining that vocational rehabilitation efforts would have been futile at this time.

Accordingly, the judgment of the compensation court must be, and hereby is, affirmed. Luehring is awarded the sum of $1,500 to apply toward the services of his attorney in this court. See Neb. Rev. Stat. § 48-125 (Reissue 1988).

AFFIRMED.

BOSLAUGH, J., dissenting.

The issue in this case is the extent of the plaintiff's disability resulting from his back injury. The award of total disability appears to be based upon testimony of the injured worker rather than upon expert medical evidence.

The burden was upon the plaintiff to establish the extent of his disability, and it has long been the rule of this court that such an injury requires expert medical evidence to establish not only the causal relationship, but the extent of the disability resulting from the injury. Unless that rule is to be abandoned, the record in this case does not support an award of total disability.

HASTINGS, C.J., joins in this dissent.