CHARLES WILLUHN, APPELLEE, V. OMAHA BOX COMPANY, APPELLANT.

483 N.W.2d 130

Filed April 23, 1992.   No. S-91-181.

Scott A. Burcham, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

J. Thomas Rowen, of Carpenter, Rowen & Fitzgerald, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Defendant, Omaha Box Company, appeals from an order on rehearing by the Workers' Compensation Court. The court found that plaintiff-appellee, Charles Willuhn, was injured in the course and scope of his employment with defendant on May 3, 1988, that as a result of that injury plaintiff was temporarily totally disabled up to January 24, 1990, and that plaintiff was permanently totally disabled thereafter. The court also found that plaintiff was entitled to further vocational rehabilitation, and awarded plaintiff attorney fees in the amount of $1,500.

On appeal, defendant assigns three errors: (1) that the evidence did not support the finding that the plaintiff is permanently and totally disabled, (2) that the court erred in awarding plaintiff additional vocational rehabilitation benefits, and (3) that it was error for the compensation court to award attorney fees to the plaintiff upon rehearing. We affirm.

The record on appeal shows the following facts. Plaintiff was employed by defendant as a truckdriver. His duties included driving, loading, and unloading semitrailers. On May 3, 1988, while in the course of his employment in unloading a truck, plaintiff injured his lower back, necessitating immediate medical attention. Plaintiff's family physician, Dr. Robert Brown, ordered a conservative treatment of the injury and prescribed rest, heat, physical therapy, and medication. He also scheduled a CAT scan and a bone scan for plaintiff on May 12, 1988. The CAT scan "revealed a herniated L-5, S-1 disc with a fragment on the right."

The conservative treatment was continued, with the addition of some continuous Astramorph blocks, but plaintiff showed no improvement. Brown referred plaintiff to Dr. Daniel McKinney, a neurosurgeon, who determined that surgery was necessary to treat plaintiff's condition. On July 21, 1988, McKinney performed a right hemilaminotomy and removed the herniated lumbar disk material. Plaintiff's condition began to improve, but in November 1988, his symptoms returned. On reevaluation, Dr. McKinney found a reherniation of the disk, and performed a second operation on February 21, 1989. McKinney stated that plaintiff had to have the two lumbar disk operations to correct the problems following the injury of May

3, 1988. Plaintiff showed gradual improvement until McKinney ultimately released him from his care on December 18, 1989, and returned plaintiff to Dr. Brown. Brown determined that plaintiff reached maximum medical improvement as of January 1, 1990, and rated plaintiff as having a 27-percent permanent partial disability, with a 40-pound restriction on lifting. Brown also suggested that plaintiff should not sit, stand, or walk for periods longer than 1 hour at a time, that plaintiff should not work at unprotected heights, and that plaintiff should use caution when around moving machinery or driving automotive equipment.

McKinney stated in a letter dated January 24, 1990, that plaintiff had reached maximum medical improvement, and assigned him a 25-percent permanent partial disability rating. McKinney also restricted plaintiff's lifting to 40 pounds and suggested that plaintiff should perform jobs which did not require frequent bending or twisting. The doctors agreed that plaintiff could not return to the job that he was doing at the time of his injury.

Plaintiff was born on June 4, 1940. He completed his sophomore year in high school and quit school his junior year. Thereafter, plaintiff's work experience has been almost exclusively as a driver of large diesel trucks. Various tests and interviews reveal that he is "a very smart individual, has good abilities in those areas that would indicate the potential for some type of formal or informal training."

The rehabilitation experts in this case disagree as to the most appropriate method of vocational rehabilitation for plaintiff. Defendant's vocational rehabilitation counselor asserts that plaintiff needs only "individualized, specialized placement" efforts. This type of placement would involve contacting individual employers, educating plaintiff regarding the process of applying and interviewing with a company, setting up interviews, and following up with the client to determine how an interview went.

In contrast, plaintiff's rehabilitation counselor testified that plaintiff needs vocational retraining. This counselor contended that none of plaintiff's previous employments required any skills which are directly transferable to work which falls within

his physical restrictions, and gave the opinion that "until [plaintiff] obtains a viable and comprehensive rehabilitation effort, he is going to remain totally unemployable."

As stated above, the compensation court found that plaintiff was temporarily totally disabled up to January 24, 1990, and permanently totally disabled thereafter and that plaintiff was entitled to vocational rehabilitation services, and awarded him attorney fees.

Findings of fact by the Workers' Compensation Court on rehearing have the same force and effect as a jury verdict in a civil case and will not be set aside on appeal where there is evidence sufficient to support them. Neb. Rev. Stat. § 48-185 (Reissue 1988); *Luehring v. Tibbs Constr. Co.*, 235 Neb. 883, 457 N.W.2d 815 (1990). As trier of fact, the compensation court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Carter v. Weyerhaeuser Co.*, 234 Neb. 558, 452 N.W.2d 32 (1990). In testing the sufficiency of the evidence to support the findings of fact made by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party. *Id.*

Defendant's first assignment of error is that "[t]he Nebraska Workers' Compensation Court erred in finding that the record showed a preponderance of the evidence in favor of finding the Plaintiff permanently and totally disabled."

Defendant contends that plaintiff has the burden of proving the nature and extent of his claimed disability and that where the injury is subjective, the disability must be established by expert medical testimony. This is a correct statement of law. *Osborne v. Buck's Moving & Storage*, 232 Neb. 752, 441 N.W.2d 906 (1989). In this case, although both medical experts testified that plaintiff was employable, within his physical restrictions, such a finding does not necessarily mean that plaintiff was not totally disabled within the meaning of the workers' compensation law.

We stated in *Luehring v. Tibbs Constr. Co.*, 235 Neb. at 890, 457 N.W.2d at 820:

Total disability in the context of the workers' compensation law does not mean a state of absolute helplessness, but means disablement of an employee to

earn wages in the same kind of work, or work of a similar nature, that he or she was trained for or accustomed to perform, or any other kind of work which a person of his or her mentality and attainments could do. [Citations omitted.]

Defendant would have us ignore the plain meaning of testimony of the two doctors. Both said that plaintiff could return to work, within the lifting and movement restrictions which they described, but both had the opinion that plaintiff could not return to the job he had been performing at the time of his injury. The very nature of the restrictions precludes plaintiff from earning similar wages in the same kind of work, or work of a similar nature, that he was trained for or accustomed to perform: freight hauling and transportation.

Nothing in the record suggests any error on the part of the Workers' Compensation Court in this respect. Whether an employee is permanently totally disabled, within the meaning of the workers' compensation law, is ordinarily a question of fact to be determined by the compensation court. *Sherwood v. Gooch Milling & Elevator Co.*, 235 Neb. 26, 453 N.W.2d 461 (1990). There is sufficient evidence to support the court's finding. We affirm the court's finding that plaintiff is permanently totally disabled. Defendant's first assignment of error is without merit.

Defendant's second assignment asserts that "[t]he Nebraska Workers' Compensation Court erred in finding that Plaintiff was entitled to further vocational rehabilitation benefits." This assignment is not premised on plaintiff's degree of disability. We have already affirmed the finding that plaintiff is totally disabled. Defendant's assignment of error is premised on the allegation that plaintiff did not cooperate fully with the rehabilitation program determined for him by defendant's rehabilitation expert.

We have held that when an employee is unable to perform the work for which he or she was previously trained, as a result of an injury covered by the Workers' Compensation Act, the employee is entitled to vocational rehabilitation service which may be necessary to restore the worker to suitable employment. *Behrens v. Ken Corp.*, 191 Neb. 625, 216 N.W.2d 733 (1974).

We have also held that a determination as to whether an injured employee is able to perform the work for which that employee was previously trained is a question of fact to be determined by the compensation court, and that determination will not be disturbed by an appellate court unless the finding is clearly erroneous. *Sherwood v. Gooch Milling & Elevator Co., supra*; *Smith v. Hastings Irr. Pipe Co.*, 222 Neb. 663, 386 N.W.2d 9 (1986). Both McKinney and Brown in this case have expressed the opinion that plaintiff could not, after his injury, perform the duties of the job which he was doing at the time of his injury. The compensation court did not err in finding that plaintiff was entitled to vocational rehabilitation.

Whether an injured worker is entitled to vocational rehabilitation is ordinarily a question of fact to be determined by the Workers' Compensation Court. *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991). In the present case, the record contains the testimony of two rehabilitation consultants, one called by each party. Plaintiff's rehabilitation expert conceded that on-the-job training was a viable option for vocational rehabilitation, but suggested that plaintiff's aptitude levels, interests, and physical limitations had not been taken into account when he was presented with lists of jobs available. Though vocational testing did reveal that plaintiff was an intelligent individual, plaintiff's expert expressed concern with plaintiff's lack of familiarity with computers. He stated that the ubiquitous use of computers would require that plaintiff "at least [be] able to enter into, read, maybe [do] some light programming" on a computer. This could be accomplished, in that rehabilitation expert's opinion, through some type of short-term training. These facts led the compensation court to conclude correctly that plaintiff is not prepared to return to the workforce armed only with his ability to learn quickly.

The opinions of the two were considered and weighed by the compensation court and a determination was made. The compensation court found that plaintiff was entitled to vocational rehabilitation, and that finding is supported by the evidence.

Defendant then contends that plaintiff refused to comply with the rehabilitation plan offered by defendant's

rehabilitation counselor, and cites Neb. Rev. Stat. § 48-162.01(6) (Reissue 1988), which provides:

Whenever the Nebraska Workers' Compensation Court or judge thereof determines that there is a reasonable probability that with appropriate training, rehabilitation, or education a person who is entitled to compensation for total or partial disability which is or is likely to be permanent may be rehabilitated . . . if the injured employee without reasonable cause refuses to undertake the rehabilitation, training, or educational program determined by the compensation court or judge thereof to be suitable for him or her . . . the compensation court or judge thereof may suspend, reduce, or limit the compensation otherwise payable . . . .

There is no evidence in the record that plaintiff has refused to undertake any "rehabilitation, training, or educational program determined by the compensation court." The record shows that plaintiff had already arranged for 3 days of evaluation and testing by a state agency to begin 2 weeks after the hearing before the three-judge panel.

The compensation court summed up the disagreement of the parties as to plaintiff's cooperation with defendant's rehabilitation service as follows:

The defendant alleges that job placement services have not been successful because of the failure of the plaintiff to cooperate. The plaintiff alleges that he has cooperated with the defendant and further alleges that he has never been adequately tested for vocational rehabilitation services and that the job placement services furnished by the defendant did not provide suitable employment for him.

The court determined that plaintiff had not been guilty of noncooperation and found that the job placement service furnished by the defendant did not provide suitable employment for him. There is ample evidence to support that finding. Defendant's second assignment of error is without merit.

Finally, defendant asserts that it was error for the court on rehearing to award plaintiff attorney fees. Neb. Rev. Stat.

§ 48-125 (Reissue 1988) provides in pertinent part:

> If the employer files an application for a rehearing before the compensation court . . . and fails to obtain any reduction in the amount of such award, the compensation court shall allow the employee a reasonable attorney's fee to be taxed as costs against the employer for such rehearing . . . .

There was no reduction of the amount of the award to plaintiff, and therefore, in this regard defendant's third assignment of error is without merit.

We hold that the Workers' Compensation Court was correct in its findings and conclusions, and we therefore affirm.

Plaintiff is allowed a fee of $1,500 for the services of his attorney in this court.

AFFIRMED.