IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


WALTON V. CONCRETE SUPPLY


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


MELVIN WALTON, APPELLEE,

V.

CONCRETE SUPPLY, INC., AND THE RASMUSSEN GROUP, INC., APPELLANTS.


Filed February 11, 2025.    No. A-24-331.


Appeal from the Workers' Compensation Court: JAMES R. COE, Judge. Affirmed.

Matthew J. Buckley, of Evans & Dixon, L.L.C., for appellants.

Sara A. Lamme, of High & Younes, L.L.C., for appellee.


MOORE, BISHOP, and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Concrete Supply, Inc., and The Rasmussen Group, Inc. (collectively Appellants), appeal from the Nebraska Workers' Compensation Court's order awarding temporary total disability benefits in favor of Melvin Walton and assessing penalties and attorney fees against Appellants. For the reasons stated herein, we affirm.

### STATEMENT OF FACTS

On June 23, 2023, Walton filed a petition in the compensation court alleging that he was injured in March 2023 during the course of his employment with Appellants. Walton alleged that he slipped on ice while performing his duties, causing injuries to his left shoulder, left elbow, low back, and left leg. He asserted that there was no reasonable controversy as to his entitlement to benefits under the Nebraska Workers' Compensation Act, but that Appellants failed or refused to pay workers' compensation disability benefits. Walton requested that the court award temporary

and permanent indemnity payments, reasonable and necessary medical care, mileage and expenses, vocational rehabilitation benefits, attorney fees, penalties, and interest as well as any other relief the court found was just and proper.

In their answer, Appellants admitted that Walton was an employee of Concrete Supply, Inc., a Rasmussen Group, Inc. company; that the Rasmussen Group maintained worker's compensation insurance coverage; that Walton sustained an injury arising out of and in the course of his employment; and that Appellants had notice of the alleged accident as of March 16, 2023. However, Appellants denied any further allegations in Walton's petition and did not assert any affirmative defenses.

The trial was held in January 2024. The compensation court received numerous exhibits including Walton's medical records; an independent medical examination; a deposition of Christopher Rogers, vice president of Concrete Supply; a document outlining Comp Choice's drug screening efforts; Appellants' alcohol and drug testing policy; Walton's employment termination record; and a claims payment list of benefits paid by Appellants on Walton's behalf. The court further received the parties' stipulated agreement in which they agreed that Walton sustained an injury in March 2023; that the injury occurred during the course of Walton's employment with Appellants; that the injury arose out of this employment; that Walton sustained an injury to his left elbow, left shoulder, and low back; and the rate of temporary benefits and Walton's entitlement to past medical bills and past mileage. During the trial, testimony was adduced from Walton. That testimony included statements that his work history was limited to packinghouse work, lawn care, some construction, auto mechanic work, and truck driving, all of which he described as "hands on" work. He testified that after his injury, he attempted to gain employment with a lawn care business, but that he simply could not perform due to his injuries. He further testified that because of his injuries and the associated pain, he was unable to perform work of the type that he was qualified to perform in accordance with his prior work history. He also denied that Appellants offered to provide him with light duty work prior to terminating him from his employment.

Following the trial, the compensation court entered an award finding that during the course of his employment with Concrete Supply Inc., Walton sustained an injury which left him temporarily totally disabled, and that at the time of the hearing, he remained temporarily totally disabled; that he was entitled to $652 per week from the date of the accident and continuing in the future as he remained temporarily totally disabled; and that Appellants were to pay the outstanding medical bills itemized in exhibit 10 and pay the outstanding mileage amount of $145.15 as itemized in exhibit 16.

The court further noted that after Walton sought medical care after reporting his injury to his employer and while receiving treatment, Walton underwent a drug screening, but that Walton's urine analysis test was refused because the urine was not at body temperature and Walton was accused of bringing in outside urine for the drug screen. Although a second urine test was requested, Walton did not produce sufficient urine in the cup for a test to be performed. Although Walton received a 10-pound lifting restriction and was cleared to return to work the next day, Walton was terminated due to the circumstances surrounding the company's attempt to screen Walton for drug use. The compensation court found that even if Appellants had proved that Walton had alcohol in his system, they nonetheless failed to satisfy their burden of proof to show that

Walton was willfully negligent, and that the consumption of alcohol was the cause of the accident. The compensation court further found that there was no reasonable controversy as to why Walton was not provided with temporary disability benefits and assessed a 50 percent waiting time penalty and attorney fees against Appellants.

Both parties timely filed a motion to reconsider. In his motion, Walton asserted that the court did not address whether future care related to his lower back injury was awarded and he requested that the court enter an order addressing the issue. In the Appellants' motion to reconsider, they argued that the court erroneously analyzed the issue based on the intoxication defense and found that Appellants failed to meet their burden when they never raised intoxication as a defense. They also argued that the court did not address their claim that if the court determined Walton was entitled to benefits, whether he was entitled to temporary loss of earning power benefits as opposed to temporary total disability benefits, because Appellants would have accommodated Walton's work restrictions but for Walton being terminated for his violation of company policy.

Following a hearing on both motions to reconsider, the court granted Walton's motion and modified the award to include an entitlement to future medical care in the nature of a referral to a pain management team to discuss possible injections to help with Walton's back pain. Regarding Appellants' motion to reconsider, the compensation court stated:

> The Court is not persuaded that [Walton's] actions in attempting to give a urine sample, as detailed in the Award, arise to the level of a violation of company policy. [Walton] attempted to give the urine sample and the fact that others disputed the originality of the urine does not make the process a refusal and a subsequent violation of company policy per se. Firing "for cause" generally goes to the employment relationship and not the workers' compensation relationship.
>
> The [Appellants state that Walton's] arguable refusal to give a urine sample is a violation of company policy and should limit an award of benefits due to the fact that [Walton] was offered a job within his restrictions.
>
> The Court finds the evidence shows a lack of a job offer within [Walton's] restrictions on the date that the urine test occurred. [Walton] was summarily fired the day after the urine test occurred, without any offer of employment within his restrictions.

The court further indicated that it declined to reconsider the Appellants' request to change the finding of temporary total disability to some lesser degree of a temporary partial loss of earning capacity. The court stated that "[i]n summary the Court finds that the Motion to Reconsider the finding of future medical care to include a back injury is sustained and the Motion to Reconsider the Courts finding of temporary total disability benefits versus a temporary partial loss in earning capacity is overruled." Appellants have timely appealed.

ASSIGNMENTS OF ERROR

Appellants have assigned as error that the compensation court erred in: (1) analyzing the issue of whether Walton was entitled to temporary total disability benefits based upon a defense of intoxication which was not raised by Appellants; (2) failing to address and find that Walton was entitled to temporary loss of earning power benefits as opposed to temporary total disability

- 3 -

benefits; and (3) finding that no reasonable controversy existed regarding Walton's temporary total disability entitlement and awarding a 50 percent penalty and attorney fees.

## STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Prinz v. Omaha Operations*, 317 Neb. 744, 11 N.W.3d 641 (2024).

On appellate review, the factual findings made by the trial judge of the Nebraska Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id.* In testing the sufficiency of the evidence to support the findings of fact in a workers' compensation case, an appellate court considers the evidence in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the appellate court gives the successful party the benefit of every inference reasonably deducible from the evidence. *Id*.

If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Manchester v. Drivers Mgmt.,* 278 Neb. 776, 775 N.W.2d 179 (2009).

## ANALYSIS

### INTOXICATION DEFENSE

Appellants first assign that the compensation court erred by framing the issue and analyzing Walton's entitlement to disability benefits as if Appellants raised an intoxication defense when they did not. Instead, Appellants argue that the issue they framed was whether and what benefits Walton was entitled to due to his termination for cause for failing to comply with the company's drug screening policy and that the court erred by failing to analyze the issue they framed. We disagree.

Following the trial, Appellants filed a motion for reconsideration with the trial court where they raised the same issue with the trial court that Appellants raise to this court on appeal. That is, Appellants argued before the trial court that it wrongly analyzed their defense to nonpayment of disability benefits by applying standards applicable to an intoxication defense. But in addressing the Appellants' motion, the compensation court found:

> One of [Appellants'] arguments is that [Walton] was fired "for cause" and therefore [Walton] would not be entitled to any benefits or a lesser amount of benefits because [Appellants' argue that] [Walton] was offered a job within his restrictions.
>
> The Court discussed in detail in the Award the issue that the defendant, Rasmussen Group, Inc., has a policy of a prohibition against alcohol use and that no driver shall refuse to submit to an alcohol drug screen that is involved in an accident. The Court detailed the elements of what occurred on that date and [Walton's] subsequent firing.

- 4 -

The Court is not persuaded that [Walton's] actions in attempting to give a urine sample, as detailed in the Award, arise to the level of a violation of company policy. [Walton] attempted to give the urine sample and the fact that others disputed the originality of the urine does not make the process a refusal and a subsequent violation of company policy per se. Firing "for cause" generally goes to the employment relationship and not the workers' compensation relationship.

[Appellants state that Walton's] arguable refusal to give a urine sample is a violation of company policy and should limit an award of benefits due to the fact that [Walton] was offered a job within his restrictions.

The Court finds the evidence shows a lack of a job offer within [Walton's] restrictions on the date that the urine test occurred. [Walton] was summarily fired the day after the urine test occurred, without any offer of employment within his restrictions.

The restrictions given by Comp Choice, where [Walton] went to get treated and took the urine test, was a 10 pound lifting restriction. That lifting restriction was in effect shortly after the time of the urine sample and at the time that [Walton] was fired.

Even if [Walton] had violated a company policy and had been fired that in and of itself does not summarily terminate plaintiff's rights to benefits for workers' compensation. See: *Guico v. Excel Corp.*, 260 Neb. 712, 619 N.W.2d 470 (2000).

Contrary to Appellants' assigned error, the compensation court's order following Appellants' motion for reconsideration demonstrates that the court did analyze the specific defense framed at trial by Appellants' relating to Walton's termination for cause and how that should impact his disability benefits. To that end, the court found that Appellants' evidence did not demonstrate a for cause basis for Walton's termination; that the evidence did not demonstrate that Appellants provided Walton substitute employment within his restrictions; and that even if Walton had violated company policy and had been terminated, that in and of itself does not summarily terminate Walton's rights to benefits citing *Guico v. Excel Corp.*, 260 Neb. 712, 619 N.W.2d 470 (2000).

As it relates to this assigned error, Appellants do not challenge the sufficiency of the evidence in relation to these factual findings. Instead, as we read it, Appellants simply assign that the court failed to analyze their raised defense. Because we find that the court did analyze Appellants' termination defense and rejected it, we find that the first assignment of error fails.

TEMPORARY PARTIAL DISABILITY VERSUS
TEMPORARY TOTAL DISABILITY

Appellants next assert that the compensation court erred in awarding Walton temporary total disability (TTD) benefits as opposed to temporary partial disability benefits. More specifically, Appellants argue that the compensation court

awarded [Walton] TTD benefits from March 14, 2023[,] for as long as [Walton] shall remain temporarily totally disabled. The court erred in awarding TTD benefits because 1) [Walton] was only entitled to temporary partial (loss of earning power) disability benefits from March 14, 2023 – October 10, 2023; and 2) [Walton] has reached maximum medical

improvement and TTD benefits cease on the day [Walton] reaches maximum medical improvement. Moreover, since [Appellants] would have accommodated [Walton's] restriction but for his failure to adhere to company policy, [Walton] should only be entitled to temporary loss of earnings rather than temporary total [disability benefits].

Brief for appellant at 11-12.

Whether a plaintiff in a Nebraska workers' compensation case is totally disabled is a question of fact. *Manchester v. Drivers Mgmt.,* 278 Neb. 776, 775 N.W.2d 179 (2009). In testing the sufficiency of the evidence to support the findings of fact, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Id.* Moreover, as the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id.*

Under Neb. Rev. Stat. § 48-121 (Reissue 2021), a workers' compensation claimant may receive permanent or temporary workers' compensation benefits for either partial or total disability. "Temporary" and "permanent" refer to the duration of disability, while "total" and "partial" refer to the degree or extent of the diminished employability or loss of earning capacity. *Gardner v. International Paper Destr. & Recycl.*, 291 Neb. 415, 865 N.W.2d 371 (2015). Temporary disability is the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident. *Escobar v. JBS USA*, 25 Neb. App. 527, 909 N.W.2d 373 (2018). Temporary disability benefits under the Nebraska Workers' Compensation Act are discontinued at the point of maximum medical improvement because a disability cannot be both temporary and permanent at the same time. *Krause v. Five Star Quality Care*, 301 Neb. 612, 919 N.W.2d 514 (2018).

Appellants contend that Walton was only entitled to temporary partial disability benefits, as opposed to temporary total disability benefits, because Appellants adduced evidence that they could accommodate his work restrictions but for the fact that he was terminated for misconduct. However, in *Willuhn v. Omaha Box Co.*, 240 Neb. 571, 574-75, 483 N.W.2d 130 (1992), the Nebraska Supreme Court found that

although both medical experts testified that plaintiff was employable, within his physical restrictions, such a finding does not necessarily mean that plaintiff was not totally disabled within the meaning of the workers' compensation law.

We stated in *Luehring v. Tibbs Constr. Co.*, 235 Neb. at 890, 457 N.W.2d at 820: "Total disability in the context of the workers' compensation law does not mean a state of absolute helplessness, but means disablement of an employee to earn wages in the same kind of work, or work of a similar nature, that he or she was trained for or accustomed to perform, or any other kind of work which a person of his or her mentality and attainments could do. [Citations omitted.]"

Here, the parties offered conflicting testimony on the degree or extent of Walton's diminished employability. In support of Walton's claim that Walton suffered from temporary total

disability, Walton established that he was initially placed on work restrictions following the accident, but as of July 2023, his doctor recommended that Walton not work and would be evaluated after 8 weeks of physical therapy/occupational therapy. Walton testified that he has been unable to perform manual labor since the accident and that his work experience was limited to manual labor jobs. Although Walton's medical provider initially prescribed a 10-pound lifting restriction following his initial visit, Dr. Genant subsequently opined in July 2023 that Walton could not work because of his injuries and related that finding back to the date of the accident. And the court found the evidence did not support a finding that Appellants offered Walton a light duty position prior to his termination which occurred between 1 and 3 days following his injury. When considered with Walton's testimony that he attempted to work but simply was unable to perform manual labor due to pain associated with his injuries, we find no clear error by the court in finding that Walton was temporarily totally disabled. See *Manchester v. Drivers Mgmt.*, 278 Neb. 776, 775 N.W.2d 179 (2009) (trial judge can rely on claimant's testimony regarding his or her own limitations to determine extent of claimant's disability).

As it relates to Appellants' claim that Walton had reached maximum medical improvement (MMI), Appellants direct us to evidence propounded by Dr. Pilley who performed an independent medical examination and determined that Walton had reached MMI on October 10, 2023. As it relates to that testimony, Appellants argue that even if Walton had temporary total disability, the temporary nature of the award should have terminated on that date. However, records offered from three separate medical providers including Dr. Genant, Dr. Johnson, and Dr. Teusink, who treated Walton following the accident, indicated that Walton had not reached MMI as he would benefit from physical therapy, occupational therapy, pain specialty evaluation, and further imaging on his shoulder. Drs. Johnson and Teusink provided their opinions as of January 2024. In short, as it relates to Appellants' claims that the evidence did not support a temporary total disability award, we recognize there was conflicting evidence in the record and that the trial court ruled in favor of Walton. We do not substitute our findings for that of the compensation court when the record contains evidence to substantiate the factual conclusions reached by the trial judge. See *Manchester v. Drivers Mgmt., supra*. Accordingly, we find no clear error in the compensation court's award of temporary total disability benefits as opposed to temporary partial disability benefits. This assignment of error fails.

PENALTIES AND ATTORNEY FEES

Appellants finally assign that the compensation court erred in assessing penalties in favor of Walton and awarding Walton attorney fees. Appellants contend that Walton was not entitled to any temporary disability and therefore no penalty was owed. They further argue that even if Walton was entitled to temporary disability benefits, a reasonable controversy existed for nonpayment and therefore the court should not have assessed the penalty against them or awarded Walton attorney fees.

Neb. Rev. Stat. § 48-125(3) (Reissue 2021) provides for a "waiting time" penalty for delinquent payments, and § 48-125(4) provides for "a reasonable attorney's fee" when the employer "refuses payment of compensation or medical payments" and "proceedings are held before the [WCC]." *Boring v. Zoetis LLC*, 309 Neb. 270, 959 N.W.2d 795 (2021). The Nebraska

- 7 -

Supreme Court has recognized that the waiting-time penalty provided for in § 48-125(3) relates only to delinquent payments of compensation, which includes "'periodic disability or indemnity benefits,'" and that the statute does not authorize a waiting-time penalty for delinquent payment of medical expenses. *Id.* Regarding attorney fees, however, we have noted that the Legislature amended the portion of the statute that is now § 48-125(4) to specifically provide for an award of attorney fees related to medical expenses, as well as to compensation. *Id.*

Section § 48-125 requires an employer to pay the 50-percent waiting-time penalty in the following circumstances: if (1) the employer fails to pay compensation within 30 days of the employee's notice of a disability and (2) no reasonable controversy existed regarding the employee's claim for benefits. *Manchester v. Drivers Mgmt.*, 278 Neb. 776, 775 N.W.2d 179 (2009). Appellants generally argue that a reasonable controversy existed for the nonpayment of benefits. Whether a reasonable controversy exists under § 48-125 is a question of fact. *Heesch v. Swimtastic Swim School*, 20 Neb. App. 260, 823 N.W.2d 211 (2012).

There is no dispute that Appellants failed to pay disability benefits within 30 days of Walton's notice of disability and, as we held above, there was no error associated with the court's award of temporary total disability benefits. Because the court awarded a waiting time payment and attorney fees here, the question raised is whether there was a reasonable controversy regarding Walton's claim for benefits that justified the withholding of timely payments. In arguing that there was, Appellants urge that they had a reasonable basis to deny disability benefits in their entirety. In the alternative, they argue that even if Walton was entitled to disability benefits, a reasonable controversy existed governing the extent of that payment obligation. We will address both arguments independently.

As it relates to denying disability benefits entirely, the basis for Appellants' complete denial of benefits is unclear. Although Appellants direct us to Walton's conduct related to the attempt to collect a urine sample and Walton's subsequent termination, they fail to articulate how that conduct provided a legal basis for denying an award. It appears that the trial court suffered from the same confusion. As it relates to Walton's conduct when Appellants requested a urine test to screen for alcohol or drug use, Appellants fail to cite any authority as to how that conduct should have impacted his benefit entitlement. See *Manchester v. Drivers Mgmt., supra* (fact than employer terminated employment of employee, whose ability to perform work for which employee is fitted has been restricted due to injury arising out of and in course of employment, does not destroy right of employee to compensation for injury).

Further, Appellants failed to plead any affirmative defenses to their obligation to pay disability benefits in their answer, and when asked to provide a basis for nonpayment of benefits during discovery, Appellants responded that it was because they "had light duty work for [Walton], but due to his termination for cause on the date of injury, [Walton] has not been paid lost time benefits."

In *Boring v. Zoetis LLC*, 309 Neb. 270, 278, 959 N.W.2d 795, 802 (2021), the Nebraska Supreme Court stated:

> Although § 48-125 does not contain the words "reasonable controversy," our case law has long held that the waiting-time penalty and attorney fees are available under § 48-125 in cases brought to the [Worker's Compensation Court] only "where there is no

reasonable controversy regarding an employee's claim for workers' compensation." *Picard v. P & C Group 1*, 306 Neb. 292, 302, 945 N.W.2d 183, 193 (2020). See, also, *Bower v. Eaton Corp.*, 301 Neb. 311, 918 N.W.2d 249 (2018). A "reasonable controversy" for the purpose of § 48-125 exists if (1) there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the WCC about an aspect of an employee's claim, which conclusions affect allowance or rejection of an employee's claim, in whole or in part. *Picard v. P & C Group 1, supra*. We have further noted: "Although the total amount of compensation due may be in dispute, the employer's insurer nevertheless has a duty to promptly pay the amount which is undisputed, and the only legitimate excuse for delay of payment is the existence of genuine doubt from a medical or legal standpoint that any liability exists." *Bower v. Eaton Corp.*, 301 Neb. at 340, 918 N.W.2d at 272.

Further, during oral arguments, when questioned regarding how Walton's termination supported Appellants' position that all disability benefits could be rightfully withheld, Appellants appeared to acknowledge a lack of authority to support that position.

In relation to Appellants' refusal to make any disability payment based on Walton's conduct that led to his termination, we find that Appellants failed to raise or articulate any reasonable controversy or basis to deny payments on that basis. As it relates to Appellants' argument governing a dispute on the scope of their obligation, the Nebraska Supreme Court held that there was an obligation to pay the amount that was undisputed. See *Boring v. Zoetis LLC, supra*.

Here, there was no dispute that Walton was injured during the course of his employment with Appellants, that the injury was the result of Walton slipping and falling while performing his job duties for Appellants, or that Walton was entitled to some temporary disability benefits. Appellants offered no testimony as to why benefit payments had not been made, nor did they call the company's workers' compensation representative or the insurance representative to explain why Walton's claim was denied. The only testimony offered was from Christopher Roger's deposition wherein he stated that the workers' compensation representative and the insurance representative oversaw the workers' compensation cases, that he was unaware of the basis for the decision to deny benefits, and that he had no idea why Walton had not received benefit payments from the insurance company.

In short, Appellants' discovery responses, answer, and the parties' stipulation provide that no reasonable controversy existed about the basic compensability of Walton's workers' compensation claim, the nature and type of the injuries, the cause of Walton's injuries, or that Walton was entitled to some benefit payment. Accordingly, we find no error in the compensation court's assessment of penalties and award of attorney fees.

CONCLUSION

Having rejected Appellants' assignments of error, we affirm the Workers' Compensation Court's order.

AFFIRMED.